## WILLIAM FOLSOM *v.* TOWN OF UNDERHILL.

### *Highways.    Towns.    Admissions.    Town Officers.*

The opening of a road by the land owners to public use, its use by the public, and repairs upon it at the public expense, by permission of the owners, are facts which tend strongly to show a dedication of it to the public as a highway; and if the land was accepted and used by the public as a highway the owner and his grantees are precluded from asserting any ownership inconsistent with such use.

Whether there has been a dedication or not is a conclusion of fact to be drawn by the jury from all the circumstances in the particular case.

Neither a dedication of land to the public for a highway, nor the use of it as such by the public, will be sufficient to impose upon the town the duty to keep it in repair, unless it has been accepted and adopted by the proper officers of the town.

The intention to adopt the road as an existing highway must be manifested by acts of the town authorities.

The expenditure of money and labor upon the road, including it in the highway rate bills as a public road on which taxes are to be expended, and in connection therewith leaving it open for travel, are facts proper to be submitted to the jury upon the question of the acceptance and adoption of the road by the town.

Conclusive evidence of intention to adopt the highway upon which repairs had been made, &c., would justify a conclusion that a bridge necessary to connect portions of the road, was adopted as a part of the highway.

Propositions for a settlement for an injury occasioned by the insufficiency of a highway, made by public officers of the town are not an admission of liability.

The liability of a town to keep a road in repair as an existing public highway rests upon the *acts*, and not upon the *admissions* of its selectmen or other officers.

The fact that the selectmen the next day after an accident happened on a highway, occasioned by the insufficiency of a bridge, proceeded to repair the bridge, is admissible in evidence as tending to show that they had previously recognized and adopted it as a public bridge.

To entitle the plaintiff to recover, his conduct must have been that of a prudent and careful man, and if he had reasonable ground to apprehend that the bridge through which he broke and where he received his injury was

unsafe for the team and load he was then driving, the driving upon the bridge under such circumstances was such an act of imprudence and want of care as to prevent his recovering damages.

In cases of severe bodily injury the services of physicians are so essentially necessary that they may be recovered for under a declaration for general damages.

THIS was an action to recover damages for an injury occasioned to the plaintiff through the insufficiency of a bridge in Underhill. Plea, the general issue, and trial by jury at the September Term, 1863, PIERPOINT, J., presiding.

The plaintiff's testimony tended to prove that at the time of the injury complained of, which was July 23d, 1862, he was driving a stage coach, weighing 1750 pounds, with four horses attached, loaded with eight passengers, from Essex Junction to Cambridge *via* Underhill Flats; that when he approached the bridge crossing Brown's River he stopped his team and three of the passengers got out and examined the bridge and pronounced it safe; that he then drove carefully upon the bridge upon a slow walk with the remainder of the passengers when one of the outside stringers of the bridge broke and precipitated coach, horses, passengers and plaintiff down some six feet, among the rocks, and thereby the plaintiff was injured and disabled so that he necessarily employed a physician to attend upon him.

The plaintiff offered to prove the amount of the physician's bill and claimed to recover such amount. The defendant objected upon the ground that the claim, as special damage, was not sufficiently set forth in the declaration. That part of the declaration referred to was as follows, " and he was thereby put to great loss, trouble, damage and expense in the needful employment of physicians, nurses," &c. The court admitted the evidence. The defendant's evidence tended to prove that the road and bridge in question, was built by private individuals for their own benefit in the fall of 1855; that the road was then cut out fifteen or twenty rods beyond the bridge, and four or five years ago the road was extended on further up the mountain by private subscription—the town having had nothing to do in the original building of the road and bridge, nor in the farther extension up the mountain.

After the cutting out of this road and the building of this bridge in 1855, the selectmen of Underhill went on and made a survey of a highway commencing about three quarters of a mile west of said bridge, and following the general course of said road, but crossing the same five or six times, which survey terminated at a point about twenty rods beyond the bridge. This survey diverged from the travelled line six or eight rods west of said bridge, and crossed the stream two or three rods above the bridge, and so as to throw the bridge outside of the highway as surveyed, and come into the travelled line again eight or ten rods beyond the bridge. The evidence also tended to show that this diversion was made purposely so as to have a straight crossing, and to avoid the sharp turn in crossing the bridge as then located. This survey the selectmen drew up on paper, signed it and caused it to be recorded in the town clerk's office of Underhill on the 15th day of February, 1856, (and is without other date,) which record, (omitting courses and distances) is as follows :

" The undersigned, selectmen of the town of Underhill, have this day laid out and caused to be surveyed a public highway in said town, described as follows :" (here follows the description by bounds, courses and distances, but without reference to the road then existing,)—" the line described by the foregoing survey is the center of the road which is three rods in width." This record was put in evidence by the defendant. Nothing else appeared upon the town records in respect to the laying or opening of said road. There was no other bridge across the stream except the bridge in question, nor any road built on the surveyed line between the points of divergence from the original worked line.

The plaintiff's evidence tended to prove that in the year 1858, by order of the selectmen of Underhill, one Porter, one of the highway surveyors of the town, worked out a small sum which they appropriated to be expended upon this road, but the same was all expended in work west of, and before you reach said bridge by a few rods. That in 1860, one Papineau, a highway surveyor of Underhill, worked out a portion of the highway

taxes on said road, each way from said bridge ; and that in 1861, one Woodworth, a highway surveyor of the town, worked out a portion of the highway taxes on the road west of the bridge. It appeared that the road laid out by the selectmen as aforesaid had not been attached to any highway district of the town before the year 1861, and that prior to that year none of the highway districts of the town had been bounded or numbered ; and it appeared that in the work done by Papineau and Woodworth they acted without any instructions from the selectmen, and that this road was not specified in their bills as being within their highway district. It not did appear that any of the work done upon said road by the town or its highway surveyors was done upon said bridge, nor upon the road between the points where the survey diverged from the travelled path west of the bridge and where it strikes the path beyond the bridge.

The declarations of the selectmen and town agent in respect to this highway and the accident were offered by the plaintiff and admitted by the court under objections by the defendant. These declarations and the charge of the court in respect to them are fully set forth in the opinion.

The defendant made several requests to the court as to the law that should govern the case, which requests and the charge of the court in respect to them are sufficiently set forth and referred to in the opinion of the court, except in the following respects : Upon the point whether the bridge was one which the town was liable to keep in repair, the court charged the jury, that the said survey alone did not make this road such a highway, nor the fact alone that people had used this as a highway ; but if it was surveyed substantially along the worked line and the town allowed the public to travel along the worked line and recognized and adopted this as a highway, it thereby became a highway which the town was liable to keep in repair. That the survey was one act tending to show this such a highway. Its being travelled by the public was another. So the fact that the highway surveyors, under the circumstances stated in the evidence, had worked out highway taxes upon it, tends to prove this such a highway. If the town has done these acts and has

Folsom *v.* Town of Underhill.

regarded and treated this as a highway, then it became a highway which the town was liable to keep in repair.

So the action of the town in the town meeting of March, 1861, and of the selectmen in bounding the highway districts tend to show this to have been such a highway. And that as to the bridge, if the town had pursued such a course as to adopt the road as such highway on both sides of the bridge, and there was no other way to cross the stream except by this bridge, the jury should treat the bridge as in like manner adopted, in the absence of all evidence to the contrary, and this question of adoption was a question for the jury.

To the admission of the testimony objected to and to the refusal to charge as requested the defendant excepted. Verdict for the plaintiff.

*S. Wires* and *Daniel Roberts*, for the defendants.

This road did not become a public highway which the town was liable to keep in repair, in any such mode as the statute prescribes for its creation; judging by the statute standard, it was no highway. *Blodgett* v. *Royalton*, 14 Vt. 288; *Bailey* v. *Fairfield*, Brayt. 128; *Patchin* v. *Morrison*, 3 Vt. 590; *Patchin* v. *Doolittle*, 3 Vt. 457; *Warren* v. *Bunnell*, 11 Vt. 600; *Young Wheelock*, 18 Vt. 493. As the road and bridge were built "by private individuals for *their own* benefit," no dedication to the public could be presumed from such short use as the public had had of it; for the same private advantage which called for the first opening it, would require its being kept open, irrespective of public use. *'Page* v. *Weathersfield*, 13 Vt. 424; *Morse* v. *Ranno*, 32 Vt. 600; *Hyde* v. *Jamaica*, 27 Vt. 454. So, though dedicated, the dedication must be accepted by the town. *Curtis* v. *Hoyt*, 19 Conn. 154; *Bowen* v. *Suffolk Mfg. Co.*, 4 Cush. 340; 20 U. S. Dig. 955, § 5; 19 U. S. Dig. 690, § 9 and 10. A user for ten years with the expenditure of taxes upon the road, is not a sufficient adoption. *Estes* v. *Troy*, 5 Maine 368; *Young* v. *Wheelock*, 18 Vt. 496; *Blodgett* v. *Royalton*, 14 Vt. 288. A highway surveyor cannot lay out or adopt highways. BENNETT, J., in *Hyde* v. *Jamaica*, 27 Vt. 455. The adoption must be by

acts, unequivocal in their character, which amount to a recognition of it as a present existing highway. *Blodgett* v. *Royalton*, 17 Vt. 40.

The court erred in admitting the declarations of the selectmen, as testified to by Dixon and Howe and the effect given in the charge to such declarations. These were but declarations and not acts,—so the court treated them. *Blodgett* v. *Royalton*, 14 Vt. 295.

Special damage must be stated "*with particularity*,"—"*much particularity.*" 1 Ch. Pl. 236, 399 ; 2 Ch. Pl. 855.

*G. F. Edmunds, E. R. Hard* and *J. French,* for the plaintiff,

That the evidence tended to show a dedication of the *locus in quo*, on the part of the owners of the land for the purpose of a highway, no question was or could have been made. See Angell on Highways, 114. And it seems clear that the evidence also tended to show an acceptance by the defendant of this dedication. Such acceptance may be made by *formal act* of the town or by any act on its part sufficiently *implying* acceptance. Angell on Highways 135 *et seq* ; *State* v. *Catlin,* 3 Vt. 530 ; *Abbott* v. *Mills,* 3 Vt. 521 ; *State* v. *Wilkinson,* 2 Vt. 482 ; *State* v. *Alburgh,* 23 Vt. 262 ; *Batty* v. *Duxbury,* 24 Vt. 155 ; *Blodgett* v. *Royalton,* 14 Vt. 288 ; *Barber* v. *Essex,* 27 Vt. 62 ; *Hyde* v. *Jamacia,* 27 Vt. 443 ; *Page* v. *Weathersfield,* 13 Vt. 424 ; *Willard* v. *Newbury,* 22 Vt 458 ; *Wright* v. *Tucky,* 3 Cush. 290 ; *Hobbs* v. *Lowell,* 19 Pick. 405.

1st. The evidence proved the construction of this road in 1855, and its use by the public as a highway since that time. This tended to show an acceptance by the town of the way in question as a highway. *Lad* v. *Shepherd,* Strange, 104 ; Angell on Highways, 135.

2d. The evidence proved that the highway surveyors in Underhill had since 1858, laid out a part of the highway taxes of the town in repairing this road which tended to show an acceptance of it by the town.

The declarations of the selectmen while engaged in repairing
38

the bridge, they being the agents of the town, were competent evidence against the town.   Grenl. Ev. 159 ; *Austin* v. *Chitten-den,* 33 Vt. 553 ; *Elkins* v. *Hamilton,* 20 Vt. 627 ; *White* v. *Morton,* 22 Vt. 15.

The charge of the court in reference to the want of care or negligence of the plaintiff at the time the injury happened, was in effect in accordance with the law.   *Hyde* v. *Jamaica,* 27 Vt. *ante; Barber* v. *Essex,* 27 Vt. 39 ; *Burke* v. *O'Brien,* 23 Conn. 339.

1. The damages were *general* and such as might be recovered without any special allegation.   The law presumes or implies them from the act complained of.   Sedgwick on Damages 574 ; *Johnson* v. *R. R. Co.,* 35 N. H.569 ; *Fagin* v. *Davinson,* 2 Drur. 153.

KELLOGG, J.   To sustain the plaintiff's action in this case, it was necessary for him to establish the fact that the highway or bridge where he received the injury of which he complains was a highway or bridge which the town of Underhill was, at the time of receiving the injury, liable by law to keep in repair. No question was made on the trial in respect to the insufficiency and want of repair of the bridge, as alleged in the plaintiff's declaration, but it was claimed that the road in question never was a highway which the town was liable to keep in repair. The plaintiff did not claim that this alleged highway had been laid out and opened for public travel in any such manner as was prescribed by the statute, but insisted that it became a public highway by a dedication of the land by the land owners to the public use, and by a recognition, acceptance, and adoption of the road as an existing public highway by the agents or officers of the town.

The opening of a road by the land owners to public use, and its use by the public without interruption, and the allowance by the land owners of repairs upon it at the public expense are facts which would tend strongly to show the intention to dedicate the land by the land owners to the use of a public highway.   If this intention was unequivocally manifested, the dedication, so far as

the owners of the soil were concerned, was complete ; and if the land was accepted and used by the public in the manner intended, the owner and all claiming in his right would be precluded from asserting any ownership inconsistent with such use. Whether the dedication was complete as against the owners of the soil was a conclusion of fact to be drawn by the jury from the circumstances of the particular case,—the sole question as against them being, whether there was sufficient evidence of an intention on their part to dedicate the land to the public as a highway. Angell on Highways, 113, *et seq.* But neither the mere fact of a dedication of land to the public as a highway nor the use of the land by the public as a road for public travel, will be sufficient to impose upon the town a duty to keep the road in repair as a highway. The clearest or most unequivocal act of dedication would be wholly ineffectual without an acceptance of the dedication by the town, acting through its proper officers. *Hyde, Adm'r,* v. *Jamaica,* 27 Vt. 454. Where a road has been dedicated, accepted, and adopted in this manner as a public highway for travel, the town becomes liable for its insufficiency or want of repair although it is a road which was never opened for public travel in the manner prescribed by the statute. *Blodgett* v. *Town of Royalton,* 14 Vt. 294. The material question in this case, therefore, is this :—Are the facts relied upon by the plaintiff to show an acquiescence in, or adoption of, this road as an existing public highway legally sufficient to support that conclusion? There could be no acceptance or adoption of this road by the town acting through its proper officers without an intention on their part to accept or adopt it as a public highway, and the question, whether there was such an intention on their part or not, was one which was to be determined by the jury upon the facts established by the evidence. If the facts were undisputed, their sufficiency to warrant the conclusion that the road was adopted as a public highway would be a question of law.

It is claimed on the part of the defendant that the court did not instruct the jury what facts would constitute such adoption. The intention to adopt the road as a present existing highway, must be manifested by acts of the town authorities, and the acts

relied on in this case were the expenditure of money and labor upon the road, and the including it in the rate bills of the highway surveyors as a public road on which the highway taxes are to be expended, and, in connection therewith, the leaving it open for public travel and use as a common highway. A single or isolated act of this character might not manifest the intention to recognize and treat this road as a public highway so fully and satisfactorily as a series of acts of the same or a similar character and tendency, but all such acts were proper to be submitted to the consideration of the jury under appropriate instructions. We interpret the statement in the bill of exceptions that the court instructed the jury that " if the town did the acts relied on " as proof of the adoption of this road, and regarded and treated " this road as a highway, then it became a highway which the " town was liable to keep in repair," as conveying the meaning that if the town did the acts with the intention to regard and treat this as an existing highway, then this road became thereby a highway adopted by the town, which the town was liable to keep in repair. In this view of the case, we think that the jury were sufficiently and properly instructed in respect to the facts which would constitute a sufficient adoption of the road as an existing highway. In reference to the requests made to the court by the defendant for instructions to the jury in respect to the work done by the highway surveyors upon the road, we concede that a highway surveyor cannot lay out or adopt highways. The power to lay out, open, alter and discontinue highways is vested by the statute in the selectmen of the town, who are also intrusted with the general supervision of the concerns of the town ; and with the particular duty of making and altering highway districts and expending of highway taxes. Acts of the selectmen appropriating money or labor to the repair of an existing road within their town manifest an intention to adopt and treat the road as an existing public highway. The injury to the plaintiff happened in July, 1862. The plaintiff's evidence tended to prove that Porter, one of the highway surveyors of the town, in 1858, by order of the selectmen of the town, worked out a small sum appropriated by them to be expended on this road, and that,

in 1860, a portion of the highway taxes were worked out on this road by Papineau, another highway surveyor of the town, and that, in 1861, Woodworth, another highway surveyor of the town, worked out a portion of the highway taxes on this road, but both Papineau and Woodworth acted without instructions from the selectmen, and this road was not specified in their bills as being within their highway district. In fact, none of the highway districts of the town were bounded or numbered prior to 1861. It did not appear that any of the work done by these highway surveyors was done upon the bridge where the injury to the plaintiff happened ; but their work was work of repairs on an existing road, and not work of construction on a new road, because it appears that the whole of this work was done within the limits of a road already existing, and not on any new road. The evidence tending to show that the work of Porter, in 1858, was authorized by the selectmen was clearly proper for the consideration of the jury as tending to show a recognition and adoption of the road as a public highway by the selectmen, and the evidence that Papineau and Woodworth, who were the highway surveyors in 1860 and 1861, respectively, worked out portions of the highway taxes committed to them on this road, although without any instructions from the selectmen, was proper to be considered in connection with any prior act of the selectmen recognizing this road as a public highway, or with any evidence that their work on this road of any part of the highway taxes was known to, and not disapproved by, the selectmen.

It is claimed by the defendant that if the jury were justified by the evidence in finding that the road was adopted by the town as a highway, the bridge was not so adopted ; and the defendant requested the court to instruct the jury that the work done by Porter, Papineau and Woodworth did not, under the circumstances stated, amount to, or tend to prove, such adoption of the bridge. It was not necessary that any work should have been done upon the bridge under the authority of the selectmen to warrant the jury in arriving at the conclusion that it was adopted as a part of the highway. If the bridge was necessary to con-

nect the portions of the road on each side of it upon which repairs had been made under the authority of the selectmen, and the evidence in respect to those repairs was sufficient to satisfy the jury that it was the intention of the selectmen to adopt the whole road, including the bridge, as a public highway, this would be all that would be requisite to justify the conclusion that the bridge was adopted as a part of the highway; and the evidence in respect to the work of the highway surveyors was entitled to consideration, in connection with the other evidence, as tending to this conclusion. We find no error in the refusal of the court to instruct the jury as requested by the defendant in respect to the work done by Porter, Papineau, and Woodworth, or in the instructions given to the jury on this part of the case.

The defendant objected to the admission of the declarations of the selectmen as testified to by the witnesses Howe and Dixon, and to the effect given in the charge of the court to these declarations. Howe was the owner of the coach and horses which the plaintiff was driving at the time of the injury complained of, and testified that on the second day after the accident, Mead, one of the selectmen, and Church, the town agent, of the town of Underhill, called on him and inquired of him the extent of the injury to his coach and horses, and offered to settle with him for the damage, and, at the same time, inquired of the plaintiff as to the injury to him, and proposed to settle with him. Dixon testified that, the next day after the accident, Hapgood, another of the selectmen of Underhill, while at work with a number of men under his charge in repairing the bridge, told him (Dixon) that he (Hapgood) had, before the accident, been requested by Mead, his fellow selectman, to repair the bridge, and that he blamed the other selectmen because they had not repaired it. These declarations of the selectmen were made subsequent to the injury, and were, at the utmost, only subsequent admissions of liability. They were not in themselves acts recognizing the road as a public highway at the time the accident happened, and were not so treated by the court; but the court instructed the jury that these declarations, in connection with the actions of the selectmen, so soon after the accident, in making repairs on

the bridge, and in calling to settle the claims of Howe and the plaintiff for damages, tended to show that the town by its officers, before the accident, regarded the road as a public highway which the town was liable to keep in repair at the time when the accident happened, and should be considered only in that light. We regard the admission of these declarations, and the charge of the court in respect to the same, as being erroneous. The fact that the selectmen made a proposition to settle the damages occasioned by the accident immediately after it occurred, is in itself of a very inconclusive character, and it would be a proceeding of doubtful policy, if not pregnant with mischief, to treat a proposition for a settlement, when made by public officers, as an admission of liability. The act of the selectmen in making repairs upon the bridge so soon after the accident, was, in our opinion, admissible as evidence, not as amounting to a recognition or adoption of the road by a retrospective effect, but as an act tending to show that the selectmen had previously recognized and adopted it; but the declarations made by Hapgood, the selectman, at that time, did not tend to explain or qualify any *act* of his, and were consequently not admissible as a part of the *res gestae*. As naked admissions, qualifying or explaining no cotemporaneous official act of his, they were no more entitled to be received in evidence than they would have been if they had been made at any other time, or on any other occasion. The liability of the town to keep this road in repair as an existing public highway rests upon the *acts*, and not upon the *admissions*, of its selectmen or other officers.

Upon the point of the care and diligence which the plaintiff was bound to exercise, the court instructed the jury that if the plaintiff did not exercise ordinary care and prudence in attempting to cross the bridge, and this contributed to the injury, he could not recover, but that he had a right to presume the bridge safe for a proper load, and was not bound to examine it before attempting to cross it, unless he had been informed that it was unsafe, or had reason to distrust or suspect its safety. The defendant requested the court to charge the jury on this point, that the plaintiff's conduct in driving upon the bridge under the

circumstances must have been that of a prudent and careful man to entitle him to recover, and that if he had reasonable ground to apprehend that the bridge was unsafe for such a team and load, the driving upon the bridge with such a team and load was such an act of imprudence and want of care as to prevent him from recovering in this action; but the court declined so to instruct the jury any further than as is above stated.   The terms " ordinary care and prudence" are some times liable to misconstruction, though, when rightly understood, they express the degree of care and prudence which the plaintiff was bound to exercise.   Although legal error might not, under ordinary circumstances, be predicated upon the use of these terms in defining the requisite degree of care and prudence which it was the duty of the plaintiff to exercise, we think that the rule should have been expressed in terms more definite and less liable to be misunderstood, and that the court ought to have instructed the jury in the terms of the defendant's request on this point, and that the omission or refusal so to instruct the jury was error.   The duty of the court in explaining the requisite degree of care and prudence which a party should exercise in a given case is so well stated by REDFIELD, C. J., in *Briggs* v. *Taylor*, 28 Vt. 183, that we may content ourselves with a reference to that decision as fully justifying the terms of the defendant's request on this point.

We do not regard the defendant's objection to the allowance of the bills of the plaintiff's physicians as being well taken.   In the case of a severe bodily injury, we regard the services of a physician as being so essentially necessary, that they may be recovered as a part of the *general* damages directly resulting from the injury; and, we think, that the plaintiff's expenses on account of the employment of physicians are stated in his declaration with sufficient particularity even to be recovered as *special* damages.   Sedgwick on the Measure of Damages, p. 574 (Marg.) *et seq.*   *Hutchinson* v. *Granger*, 13 Vt. 386, 394.

Judgment of the county court for the plaintiff reversed, and a new trial granted.