## TOWN OF CLARENDON *v.* RUTLAND RAILROAD CO.

January Term, 1902.

Present: ROWELL, TYLER, MUNSON, WATSON and STAFFORD, JJ.

Opinion filed August 27, 1902.

*Overhead crossing—Duty to maintain—Railroad charter—Power of legislature—Constitutional law—Dedication and acceptance of highway—Evidence—Questions for jury.*

Upon the question whether a certain road from a farm house to the main highway had been dedicated as a public highway when a railroad was built across it, evidence that such farm buildings had stood there more than a hundred years, that the only way of going to and from them to the main highway was by this road, that it existed before the railroad was built, that it was fenced and kept open for public travel, and that the public used it as there was occasion, is admissible, and sufficient to sustain a finding of such dedication.

In connection with these facts, evidence that the highway surveyors, by direction of the selectmen, had kept this road in repair, that the defendant, many years ago, removed an overhead bridge on it and replaced it with a more substantial one, that it was used as a public highway prior to 1847, is admissible, and tends to show an adoption of the road on behalf of the town.

The legislature cannot grant authority to a railroad company to construct its road without regard to the rights of other persons and corporations. and the provisions in the charter of a railroad company requiring that the railroad shall be so constructed that when it crosses a highway, it shall not impede or obstruct the safe or convenient use of the same, and that, if a highway is raised or lowered in its construction, such alteration shall be made to the satisfaction of the selectmen of the town, require the company to maintain, as well as construct, an overhead crossing made necessary by lowering a highway in the construction of the railroad.

Were this not so, the legislature would have the power to impose this additional burden upon the company,—as is done by V. S. 3844,— it being a valid exercise of the police power inherent in the State.

Nor do the provisions of V. S. 3846 amount to the taking of the company's property without due process of law, since it provides for notice to the company, and gives it an opportunity to perform the work before the town can do so at the company's expense.

ASSUMPSIT under V. S. 3846. Plea, the general issue. Trial by jury at the September Term, 1901, Rutland County, *Start*, J., presiding. Defendant's motion for a verdict overruled. Judgment, *pro forma*, for the plaintiff, on special findings by the jury. The defendant excepted.

*Frederick H. Button* and *William H. Button* for the defendant.

A highway surveyor cannot accept a dedication on behalf of the town, without directions from the selectmen. *Hyde* v. *Jamaica,* 27 Vt. 443; *Folsom* v. *Underhill,* 36 Vt. 580. Use of a road for public travel with knowledge on the part of the selectmen will not amount to an acceptance. *Bailey* v. *Fairfield,* Brayt. 128; *Hyde* v. *Jamaica, supra; Blodgett* v. *Royalton,* 14 Vt. 290; *Tower* v. *Rutland,* 56 Vt. 28.

V. S. 3846 does not apply to the defendant corporation. The charter of the Champlain & Connecticut River Railroad Co., to whose rights the defendant succeeded, provided that the company should be "seized and possessed" of lands acquired by condemnation,—as this land was. Acts of 1843, No. 54, s. 7.

The company was given authority to raise or lower a highway, and make such alteration to the satisfaction of the town. *Id.* s. 14. The charter was not subject to future legislation by its terms, and was a contract which the State could not impair. *Dartmouth College* v. *Woodward,* 4 Wheat. 518; *Pingrey* v. *Washburn,* 1 Aik. 264.

The statute applied to this defendant, deprives it of its property without process of law.

*Butler & Moloney* and *George E. Lawrence* for the plaintiff.

The road in question was a public highway by dedication and adoption. A series of acts by the officers of the town is sufficient to show an adoption. Angell on High. 114-135; Greenl. Ev. 159; *Pratt v. Swanton,* 15 Vt. 147.

The evidence shows that the road existed as an open, public road and the only means of getting to the buildings on the Smith farm for over a hundred years, which with the evidence that the defendant recognized it as a public highway by building and maintaining the bridge, and that the highway surveyors expended the money of the town upon it by direction of the selectmen, is sufficient to establish its character as a public highway.

TYLER, J. Assumpsit, under V. S. 3846, to recover the amount expended by the plaintiff in building a bridge upon an alleged highway that extends across the defendant's railroad in said town.

The defendant, in the year 1848, under a charter granted by the legislature in the year 1843 to the Champlain and Connecticut Railroad Co., to whose franchises it succeeded, by condemnation proceedings acquired a right of way five rods wide, running in a northerly and southerly direction through the town, crossing the farm of Enoch Smith, and built its railroad upon it. On the east side of the five rods was a main highway of the town, called the "East Road," running in the same general direction with and near the railroad.

The buildings upon the Smith farm were west of the railroad, which was constructed in a cut opposite said buildings, so that an overhead crossing was necessary for persons and teams to pass between the buildings and the East Road, and a crossing was constructed by the railroad company for that pur-

pose.    The condemnation proceedings included the location of the crossing and the approaches to it.

There was no record evidence that a highway was ever laid out or surveyed between the Smith buildings and the East Road, nor that the defendant, nor its predecessor, ever took any corporate action in respect to a dedication of the premises to the public as a highway; but it appeared that the defendant maintained a crossing there until a short time before the present bridge was built, when the defendant tore it down by reason of its unsafe condition.

The jury were not required to return a general verdict, but they found by special verdicts that the highway in question was a public highway when the plaintiff notified the defendant to rebuild the bridge; that it was a public highway at and before the time the railroad was built through the Smith farm; that the plaintiff's selectmen adjudged that it was necessary to rebuild the bridge and so notified the defendant, and that the sum expended in rebuilding it was reasonable.

1. The first question presented by the exceptions is whether the plaintiff's evidence tended to show that at the time the railroad was located and built it was extended over a then existing public highway at the point in question, or whether the court should have directed a verdict as moved by the defendant.

As this road was not laid out and opened in the manner provided by the statute, the question is whether there was a dedication to the public and an acceptance by the town; for it is well settled that neither a dedication of land to the public for a highway, nor the use of it as such by the public, is sufficient to impose upon a town the duty to keep it in repair, unless it has been accepted and adopted by the proper town officers. An intention to adopt the road as an existing highway must be manifested by acts of the town authorities.  *Pratt et al.* v.

*Swanton*, 15 Vt. 147; *Hyde* v. *Jamaica*, 27 Vt. 443; *Folsom* v. *Underhill*, 36 Vt. 580; *Tower* v. *Rutland*, 56 Vt. 28.

In *Folsom* v. *Underhill*, the court laid down this rule: "The opening of a road by the land owners to public use, and its use by the public without interruption, and the allowance by the land owners of repairs upon it at the public expense, are facts which would tend strongly to show the intention to dedicate the land by the land owners to the use of a public highway. If this intention was unequivocally manifested, the dedication, so far as the owners of the soil were concerned, was complete; and, if the land was accepted and used by the public in the manner intended, the owner and all claiming in his right would be precluded from asserting any ownership inconsistent with such use."

In the present case the Court instructed the jury in accordance with the well established rules, that there must have been an intention by the land owner to dedicate, a manifestation of that intention by his acts, and an acceptance or adoption by a majority of the selectmen.

The plaintiff's evidence tended to show that the buildings on the Smith farm had occupied the place where they now stand for more than a hundred years; that the only way of going from them to the main highway and returning was by this road, and that it was in existence before the railroad was built. These facts and the fact that the road was fenced and kept open for public travel, and that the public used it as there was occasion, were evidence from which the jury were warranted in finding both an intention to dedicate and the act of dedication by the land owner.

We think the evidence tends to show an adoption of this road by the town. The witness Crossman testified that he was eighty-four years old, and had lived upon a farm adjoining the Smith farm since he was two years old; that the Smith

house was apparently old when he first knew it; that he had known the road as long as he could remember; that it was bounded by old stone walls, and had always been a public road; that it was in existence before the railroad was built, and that the railroad company built a trestle bridge over its track so the public could continue to use the road; that he was highway surveyor before the railroad was built; that the selectmen gave him tax bills with directions to repair "all the roads" in his district, which he understood included this one, because it was one that "they usually kept in repair." He had reason to remember that he repaired the road the year the railroad was built, because, as he says, it got out of repair by stone being drawn over it for use in building the railroad, and that he was directed by the selectmen to lay out more money upon it than was upon the tax bill. His testimony tended to show that in the year the railroad was built, and in previous years, as highway surveyor he received tax bills from the selectmen, which included this road, that he expended money upon it, as upon other roads and returned the tax bills to the selectmen. This evidence was properly admitted. Crossman's testimony also tended to show that in 1862 or 1863 the railroad company removed the trestle bridge, and built a new one in its place, with stone abutments, which was removed by the defendant, and replaced by the plaintiff by the bridge in controversy.

Another witness who was born in the Smith house in 1830, testified that he knew this road prior to 1847, and that it was then fenced and used as a public highway. All this evidence was properly admitted as tending to show that this road was a public highway by acceptance and adoption by the plaintiff town, and it was not error to submit the question to the jury.

2. The defendant makes the further point that its whole duty was performed when it had constructed the original crossing to the satisfaction of the selectmen, and that it did not owe the

town the duty of maintaining it.  This claim renders it necessary to examine the company's charter.   Section 14 is as follows: "If said railroad shall cross * * * any canal, highway, or turnpike, the same shall be so constructed as not to impede or obstruct the safe and convenient use of such canal, highway, or turnpike, and said corporation may raise or lower such turnpike, highway, or private way, so that said railroad, if necessary, may pass under or over the same.   And if said corporation shall raise or lower any such turnpike, highway, or private way, and shall not so raise or lower the same, as to be satisfactory to the proprietors of said turnpike, or to the selectmen of the town in which said highway or private way is situated, said proprietors, or selectmen, may require, in writing, of said corporation, such alteration or amendment as they may think necessary; and if the required amendment or alteration be reasonable and proper, and said corporation shall unnecessarily neglect to make the same, such proprietors or selectmen may make such alteration and amendment, and may prosecute to final judgment and execution, in any court proper to try the same in an action on the case against said corporation, and shall therein recover a reasonable indemnity in damages, for all expenses occasioned by making such alteration, with costs of suit. * * *"

While the charter provided that the railroad company should be "seized and possessed" of the lands acquired by the condemnation proceedings, the grant was made with reference to existing rights of towns through which its road passes, and with the evident intention of the legislature to protect those rights.

The defendant's duty to construct an overhead crossing for the use of the public when it built its road is conceded, provided the highway was then existing.   The language of the charter, requiring that the railroad should be so constructed that when it crossed any highway it should not *impede or ob-*

*struct the safe and convenient use of such highway,* implies the maintenance of a crossing for the use of the public in connection with the road in question.    If the crossing were destroyed, travel over the highway would be impossible.

The charter requires the building of the crossing in connection with the construction of the railroad.    The raising or lowering of the highway, so that the railroad may pass under or over it, is made a part of the construction of the railroad, and the railroad and the crossing are to exist together so that the public may continue to use the highway.    The charter makes no intimation that the burden is to be shifted from the railroad company to the town in case the crossing should be destroyed or become out of repair and impassable.    We hold, therefore, that it was the railroad company's duty under its charter to construct and maintain a crossing at the point in question.    This is the only reasonable construction of section 14.    V. S. 3844-5-6 impose no duty upon the company beyond what the charter requires.    These sections only provide a more specific remedy, when railroad companies are in default of their duty, than was provided by the charter.    The later acts relate to the remedy rather than to the liability.    *People* v. *Cooper,* 6 Hill, 516.

3. But if the charter were construed to mean that the company had performed its whole duty when it made the overhead crossing, and that the duty to rebuild was not required, the legislature had a right to impose additional burdens upon it. These sections had their origin in No. 26, Acts of 1852.    Section 3844 provides that when a railroad company has constructed a railroad across a public highway by passing upon, over or under the traveled path thereof, the corporation shall keep in good and sufficient repair, and rebuild when necessary, bridges, culverts, crossings, and other constructions made for

the accommodation, safety and convenience of the public travel on the highway, over, under or upon such railroad. * * *

By section 3845, the liability of the corporation continues although the railroad has been abandoned, unless the select-men of the town, in writing, consent that the company be released therefrom.

V. S. 3846 reads: "If the selectmen of a town in which such crossing is located are of opinion that such bridge, culvert, crossing, or other constructions require repairing or rebuilding in order to be safe for travel thereon, they may notify the corporation, required by this chapter to repair or rebuild the same, by leaving a written notice to that effect with the president, superintendent of such road, or the clerk of said corporation. And if such corporation does not repair or rebuild the same for one month after such notice, the town may do so and recover the expense thereof of the corporation, in an action of general assumpsit for work and labor done, with costs." It was not within the scope of legislative authority to grant to the company a right to construct and operate its road without regard to the rights of other persons and corporations. It is a settled principle that every holder of property, however absolute his title, holds it under the implied liability that his use of it shall not be injurious to the enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property is held subject to general regulations made by the legislature, under its police power, for the common good and general welfare. Cooley's Con. Lim., (6th ed.) ch. 16; Commonwealth v. Alger, 7 Cush. 53. REDFIELD, C. J., said in Thorpe v. R. & B. R. Co., 27 Vt. 140, 62 Am. Dec. 625: "By this general police power of the state, persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the state." In respect to impairing the obliga-

tions of contracts, he said: "All contracts and all rights * * * are subject to this power; and not only may regulations which affect them be established, * * * but all such regulations must be subject to change from time to time, as the general well-being of the community may require, or as the circumstances may change * * *." The subject of legislative control over corporations is exhaustively discussed in this opinion and the case is often referred to by courts and law-writers as a leading authority. It is there declared that the essential franchise of a railroad company is the right to operate its road and receive fare and freight; that the entire power of legislative control is reserved unless expressly, or by necessary implication, restricted in the charter; that the corporation takes nothing by intendment but what is necessary to the enjoyment of what is expressly granted; and a quotation is made from Chief Justice MARSHALL's opinion in the Dartmouth College case, 4 Wheat. 518, that, "a corporation is an artificial being—the mere creature of the law—it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence."

The question in the Thorpe case was whether the defendant was bound by the provision in the general railroad act of 1849, which required railroad companies to construct and maintain cattle guards, there being no such obligation imposed upon the defendant by its charter, and it was held that it was within the scope of the police power of the State, through the legislature, to make such requirement; that this power extends to the regulation and control of the entire business of railroads; that while the powers expressly, or by necessary implication, conferred by the charter, and which are essential to the successful operation of the corporation are inviolable, beyond this the entire power of control resides in the legislature unless such power is expressly limited.

This subject is considered in 19 Am. & Eng. Ency. (1st ed.) 884, and it is there said to be settled that the construction and operation of a railroad is a business "affected with a public interest," so that the State has a right to control and regulate it. Among the cases cited in the notes are *Munn* v. *Illinois*, 94 U. S. 113; *Chicago etc. R. Co.* v. *Cutts*, 94 U. S. 155-164, 183-187; *Peik* v. *Chicago etc. R. Co.*, 94 U. S. 164.

That railroad corporations hold their property and exercise their functions subject to legislative control is beyond question. The price for transporting freight and passengers, within certain limitations, the speed of trains, the way in which they may cross or run upon highways or turnpikes, are all within the power of the legislature to regulate, although the power to alter and amend the charters has not been reserved. This was held in *People* v. *Boston, etc. R. Co.*, 70 N. Y. 569. This is upon the ground that such corporations exercise their franchise for the public benefit, and are subject to regulation by the power that created them; that it is a part of the police power which is inherent in every government, with such limitations only as are provided by the State and Federal Constitutions. 19 Am. & Eng. Ency., (1st ed.) 885.

It was held in *St. Louis & San Francisco R. Co.* v. *Mathews*, 165 U. S. 1, that a Missouri statute making every railroad corporation in the State liable for all property injured or destroyed by fire from its locomotives, was constitutional and valid, and neither violated any contract between the State and the railroad company, nor deprived the company of its property without due process of law. Statutes requiring railroad companies to keep watchmen at points where roads intersect and at other dangerous places; imposing penalties for delay in transporting goods; for not keeping ticket offices open an hour before the departure of trains; prescribing the time that trains shall stop at certain stations and at points where roads cross

each other; prohibiting the use of stoves and furnaces for heating cars; requiring the lighting of cars in certain stations; prohibiting the running of cars by steam through cities; requiring the erection of stations and depots at certain points, and numerous other statutory regulations and requirements, have been upheld as constitutional and not impairing the obligations of contracts. A case much in point is *Boston etc. R. Co.* v. *County Comrs.,* 79 Me. 386, 10 Atl. 113, 32 Am. & Eng. R. Cas. 271, which upholds a statute requiring that the expense of maintaining so much of the highway as is within the limits of the right of way where the track is crossed at grade, shall be borne by the railroad company.

Upon all the authorities, and upon the principle that railroads must be run in such a manner as will be for the public benefit as well as for the interest of the companies, this statute must be held valid.

Nor can it be maintained that the action of the town was the taking of the defendant's property without due process of law. The selectmen, indeed, decide when it is necessary to rebuild or repair the crossing, but they must notify the railroad company and give it an opportunity to perform the work, and it is only upon the company's default that the town may rebuild or repair, and have an action of assumpsit to recover the amount expended. In this case the court submitted to the jury to find what amount was necessarily expended by the town in rebuilding the crossing. Every constitutional right of the defendant was fully protected.

*Judgment affirmed.*