CHARLES A. DEMAND, as Administrator of the Estate of GROVER C. DEMAND, Deceased, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

Negligence — when railroad company not liable for death of employee of sub-contractor killed by train — erroneous charge as to duty owed by defendant to plaintiff's intestate.

Defendant made a contract with a construction company to do work on one of its stations. This company made a sub-contract with a paving company to do part of the work and the latter company employed as one of its workmen plaintiff's intestate, who was injured, while engaged in driving a horse for the purpose of hoisting materials, between two of defendant's tracks which were something over twenty feet apart. There was evidence that while the horse was shying toward one of the tracks deceased was trying to crowd him back and while so doing was struck by a train. The original contract provided that the contractor might not make any sub-contract for the work without the written consent of defendant. No written consent was ever given to a sub-contract with intestate's employer, neither was there any evidence that before the accident defendant either waived the provision in question or in any form consented to a sub-contract or to the presence of the intestate on its premises or even knew that he was there. *Held,* that the court erroneously refused to charge in substance these facts in reference to the contract between the defendant and the contractor when requested so to do, and erroneously charged that "In determining what duties rested upon the defendant it will be necessary for you to first find whether this plaintiff's intestate was upon the property of the defendant with its

knowledge or consent, that is, whether he was doing work for the benefit of the defendant. If so, it was the duty of the defendant to use such care as an ordinarily prudent person would use under the circumstances."

The engineer saw the man and horse about 1,300 feet away, but did not attempt to reduce the speed of the train, materially, until within about 75 feet of the man. One of the disputed questions of fact was whether there was anything in the appearance or action of the horse to indicate necessity for earlier stopping of the train.

The court erroneously charged that if plaintiff's intestate " was working in this place without the knowledge or consent of the defendant, then the defendant owed no further duty to this young man than the duty of not being wanton and reckless or running him down in a wanton or reckless manner," since, under such conditions, the engineer having seen intestate 1,300 feet away, became obligated to use reasonable efforts and care to avoid injuring the deceased, even though primarily and originally he may have been a technical trespasser; and, if the jury chose to believe it, there was evidence justifying the conclusion that the actions of the horse were such that reasonable prudence required the train to be stopped or slowed before it was, there was sufficient evidence to make the question of intestate's contributory negligence one of fact.

*Demand* v. *N. Y. C. & H. R. R. R. Co.*, 130 App. Div. 875, reversed.

(Argued January 28, 1910; decided March 15, 1910.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 20, 1909, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant.

Defendant made a contract with the Snare & Trieste Company to erect or do work on a station on its Putnam division, north of New York city. Apparently said contractor had made a sub-contract with the Vulcanite Paving Company to do part of the work, and the latter company had employed as one of its workmen plaintiff's intestate. He had only commenced work on the morning of and a short time before the accident, which occurred between 8:30 and 9 o'clock. His work consisted in driving back and forth a horse attached to a rope, whereby materials were hoisted from the ground to the

place where they were needed. The horse was thus moved back and forth between two of defendant's tracks, which were between twenty-one and twenty-two feet apart. There was evidence that just before the accident one of defendant's trains had passed to the south on one side of this space, with the result of causing the horse to shy or crowd over toward another track, and that while the intestate was trying to shove or crowd him back, another of defendant's trains came south on the track towards which the horse was crowding, and struck and killed intestate, who was between the horse and the track. The engineer of this train was able to and did see the man and horse for about thirteen hundred feet before he struck them, and had plenty of opportunity to stop his train. He did not, however, attempt materially to reduce its speed until within about seventy or seventy-five feet of the man, and one of the disputed questions on the trial was whether there was anything in the appearance or actions of the horse to indicate any necessity for thus stopping his train until he made the effort.

The contract between the defendant and the original contractor provided in substance that the latter might not make any sub-contract for doing any work on the station without the written consent of one of the superior officers of the former, and there was no evidence of any such consent, and no proof of any waiver of such provision or acquiescence in any sub-contract with intestate's employer either before or after the accident except as claimed to be found in some evidence given by an employee of the latter as follows: "After the accident we had orders from the New York Central — I got orders through Snare & Trieste that we could not use a horse there any more, and that we would have to use some other conveyance. So we put in a steam hoist which is called the elevator hoist, which is mentioned as the hod hoist."

*Robert A. Kutschbock* and *Charles C. Paulding* for appellant. The evidence fails to show that plaintiff's intestate

was lawfully on the railroad company's premises at the time he was struck by its train. ( *Woodruff* v. *R. & P. R. R. Co.*, 108 N. Y. 39 ; *Langley* v. *Rouss*, 185 N. Y. 201 ; *McGratty* v. *Haberman*, 127 App. Div. 199 ; *Sterger* v. *Van Sicklen*, 132 N. Y. 499 ; *Larmore* v. *C. P. I. Co.*, 101 N. Y. 391 ; *Severy* v. *Nickerson*, 120 Mass. 306 ; *Flanagan* v. *A. A. Co.*, 37 App. Div. 476.)   There is no testimony in the case from which acquiescence by the railroad company in the sub-letting of the contract and the use of the horse between the tracks by the Vulcanite Paving Company can be inferred. ( *Woodruff* v. *R. & P. R. R. Co.*, 108 N. Y. 39 ; *McCafferty* v. *S. D. & P. M. R. R. Co.*, 61 N. Y. 178.)   The charge of the learned trial court with respect to plaintiff's intestate being lawfully where he was when struck imposed upon the defendant an unjust and illegal obligation. ( *Morris* v. *L. S. & M. S. R. R. Co.*, 148 N. Y. 182 ; *Rider* v. *S. R. T. Ry. Co.*, 171 N. Y. 139.)   It was not the duty of the engineer to anticipate that upon the approach of the train the horse might become uncontrollable and bring himself or his driver in contact with the approaching train. ( *Spooner* v. *D., L. & W. R. R. Co.*, 115 N. Y. 22 ; *Crystal* v. *T. & B. R. R. Co.*, 105 N. Y. 164 ; *Eastwood* v. *L. C. C. Ry. Co.*, 58 N. W. Rep. 651 ; *Flaherty* v. *Harrison*, 98 Wis. 559.)

*M. L. Malevinsky* and *Frank A. Acer* for respondent. The decedent was lawfully upon the defendant's premises ; therefore, defendant was legally obligated to use and exercise ordinary care for his protection. ( *Seaman* v. *Koehler*, 122 N. Y. 646 ; *Baldwin* v. *Abraham*, 57 App. Div. 69 ; *Handy* v. *M. S. R. Co.*, 70 App. Div. 29 ; *Froehlich* v. *I. R. T. Co.*, 120 App. Div. 476 ; *Wells* v. *B. H. R. R. Co.*, 67 App. Div. 213 ; *Ominger* v. *N. Y. C. & H. R. R. R. Co.*, 4 Hun, 161 ; *Dempsey* v. *N. Y. C. & H. R. R. R. Co.*, 81 Hun, 156 ; *Felice* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 346 ; *Johnson* v. *Terry & Tench Co.*, 113 App. Div. 762.)   The evidence is sufficient to justify the conclusion that the decedent met his death as a result of the negligence of the defendant

and its servants. (*Fullerton* v. *M. S. Ry. Co.*, 63 App. Div. 2; *De Loge* v. *N. Y. C. & H. R. R. R. Co.*, 92 Hun, 150; *Massoth* v. *D. & H. C. Co.*, 64 N. Y. 524; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 124; *Thompson* v. *N. Y. C. & H. R. R. R. Co.*, 110 N. Y. 637; *Branch* v. *N. Y. C. & H. R. R. R. Co.*, 39 App. Div. 436; *Wasmer* v. *D., L. & W. R. R. Co.*, 80 N. Y. 215; *Manthey* v. *Rauenbuehler*, 71 App. Div. 174; *Muhs* v. *F. Ins. S. Co.*, 89 App. Div. 390; *Manzella* v. *R. Ry. Co.*, 105 App. Div. 13; *Eckert* v. *L. I. R. R. Co.*, 43 N. Y. 502.) None of the exceptions to the charge, or to the court's refusal to charge specially as requested by the defendant, are available to the appellant. (*Phillips* v. *N. Y. C. & H. R. R. R. Co.* 127 N. Y. 658; *Manthey* v. *Rauenbuehler*, 71 App. Div. 174.)

HISCOCK, J. This case was tried on the theory that if plaintiff's intestate was rightfully on defendant's track when he was struck, the latter owed him the duty of reasonable care to avoid injuring him; that if he was not rightfully there, it only owed him the duty to refrain from wanton or reckless conduct causing injury. The question whether he was rightfully there was made dependent on the further inquiry whether his employer had a valid sub-contract for doing the work for the defendant whereon intestate was engaged when killed, and the court permitted the jury, despite defendant's objections and exceptions, to find that the employer did have such sub-contract, and by this path to reach the conclusion that defendant was liable because of lack of reasonable care. I think there was no evidence of such valid sub-contract and that this was, therefore, error.

There is no dispute that the only contract made by the defendant was with a company other than that which employed plaintiff's intestate and that this contract expressly provided that no sub-contract might be made without the written consent of defendant's officer. This was a provision of substance which defendant had a perfect right to put in its contract and exact performance of. It may have

been intended for the purpose not only of securing better work on its station, but also to prevent even such an accident as occurred by securing the right to reject any contractor or sub-contractor who in the opinion of defendant would not be vigilant to prevent accidents not only to his employees but to trains passing the locality of the work.

No written consent was ever given to a sub-contract with intestate's employer, nor was there any evidence that before the accident defendant either waived the provision in question or in any form consented to a sub-contract or to the presence of intestate on its premises or even knew that he was there. The last was hardly possible for he had just commenced work. The only evidence from which plaintiff seeks to supply defendant's waiver of the clause in question is the bit already quoted wherein some employee of the sub-contractor testified that "After the accident we had orders from the New York Central — I got orders through Snare & Trieste that we could not use a horse there any more." It does not appear when this order was given, and at most it was only from the original contractor and not from the defendant, and in my opinion it is totally inadequate to serve as a basis for a finding by the jury that the defendant even after the accident assented to and ratified any sub-contract.

Under these circumstances the court erroneously charged in its main charge: "In determining what duties rested upon the defendant it will be necessary for you to first find whether this plaintiff's intestate was upon the property of the defendant with its knowledge or consent — that is, whether he was doing work for the benefit of the defendant. If so, it was the duty of the defendant to use such care as an ordinarily prudent person would use under the circumstances. * * * If Demand was working in this place without the knowledge or consent of the defendant, then the defendant owed no further duty to this young man than the duty of not being wanton and reckless or running him down in a wanton or reckless manner."

It erroneously refused to charge as follows: "That there is

no evidence in the case that there was any agreement between the defendant   *   *   *   and the Vulcanite Paving Company (intestate's employer) and the Westchester Contracting Company   *   *   *   by which either of those parties was to do any work upon Morris Heights Station or upon any part of it.

"That the only evidence in the case of a contract with any one with respect to the construction of the Morris Heights Station or any part thereof is with Snare & Trieste.

"That under the terms and conditions of that contract no part of the work could be sublet except by the written consent of the Chief Engineer of the defendant, the New York Central and Hudson River Railroad Company.   *   *   *

"That there was no evidence in the case that plaintiff's intestate was upon the property of the defendant, the New York Central and Hudson River Railroad Company, with its knowledge or consent."

The other rule laid down by the court in effect that if intestate was not on the tracks under the authority of a valid sub-contract made with his employer, defendant owed no duty except to refrain from wanton injury was also incorrect. There was no evidence of wanton injury, and, moreover, this was not the correct rule of conduct on the evidence.

It is not claimed that intestate went where he was as an intentional trespasser and wrongdoer. At most his trespass, so far as I can see, was technical and unintentional. It is not to be presumed that he knew of the legal relations or lack of them between his employer and defendant. In addition, the court finally charged, "That if the jury find that plaintiff's intestate got dangerously near to the south-bound track in attempting to keep the horse off of that track or farther away from it so as to avoid possible injury to the horse they must find a verdict for the defendant." The obvious converse of this charge was that the jury must find before rendering a verdict for plaintiff that intestate was endeavoring to keep the horse off the track so as to avoid an accident to the approaching train. Under such conditions the engineer having seen

intestate when he was about 1,300 feet away, became obligated to use reasonable efforts and care to avoid injuring the latter even though primarily and originally he may have been a technical trespasser, and if the jury chose to believe it, there was evidence justifying the conclusion that the actions of the horse were such that reasonable prudence required the train to be stopped or slowed down before it was. (*Remer* v. *L. I. R. R. Co.*, 36 Hun, 253; affd., 113 N. Y. 669; *Wasmer* v. *D., L. & W. R. R. Co.*, 80 N. Y. 212; *Rider* v. *Syracuse Rapid Transit Ry. Co.*, 171 N. Y. 139.)

Passing by the consideration of defendant's duty there was sufficient evidence to make the question of intestate's contributory negligence one of fact.

I do not overlook the possibility that by a somewhat complicated process of reasoning we might reach the conclusion that notwithstanding the erroneous instructions which they received, the jury must have found facts sufficient to sustain the judgment on a correct theory. But notwithstanding this may be so, there was so much misapprehension concerning the issues to be submitted to the jury that it seems much preferable that there should be a re-trial whereon under correct instructions the jury can intelligently decide the issues essential to the disposition of the case.

The judgment, therefore, should be reversed and a new trial granted, costs to abide event.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment reversed, etc.