## The Inhabitants of LOWELL *versus* THE BOSTON AND LOWELL RAIL ROAD CORPORATION.

A rail road corporation was authorized to construct its rail road across a highway, and in the progress of the work it became necessary from time to time to remove certain barriers, which were placed by the corporation across the highway for the protection of travellers, but were adopted by the town in which the highway was situated, and in consequence of the neglect of the workmen to replace the barriers, at night, a traveller, in 1832, sustained an injury, and, subsequently, under *St.* 1786, *c.* 81, recovered double damages against the town. It was held, that the rail road corporation was bound to cause the barriers to be replaced at night, although its charter contained no express provision on this point ; as otherwise an accident might have happened before the town had notice, actual or constructive, and no one would have been liable for the damages.

*Held* also, that the corporation was responsible for the negligence of such workmen. although they were employed by an individual, who had contracted to construct this portion of the rail road, for a stipulated sum, the work being done by the direction of the corporation.

*Held* also, that an action might be sustained against the corporation by the town for indemnity, the parties not being *in pari delicto ;* but, that the town was only entitled to recover the single damages, as, beyond that extent, it had suffered from its own *constructive* negligence ; and that the corporation was not liable for the costs and expenses of the action brought against the town by such traveller, it not appearing, that such action was defended at the request of the corporation, or for its benefit.

ACTION on the case. The declaration set forth, in substance, that the plaintiffs were bound by law to keep in repair a highway leading from Thorndike street, in Lowell, to Chelmsford ; that the defendants, in constructing their rail road in Lowell, cut through and across such highway ; that in the progress of the work, it became necessary for the defendants to make use of such highway for the purpose of removing stone and rubbish from the deep cut made for the passage of the rail road ; that while using the highway for this purpose, they removed certain barriers which had been placed across the highway to prevent travellers from falling into the deep cut, and neglected to re-place the same ; that in consequence thereof two persons, named James Currier and Mary Smith, while driving along such highway, on the 11th of December, 1832, in the night time, were precipitated into the deep cut, and greatly injured ; and that by reason thereof those persons brought their actions and recovered large sums of money against the plaintiffs, which the plaintiffs had been compelled to pay, together with wit-

ness fees, counsel fees, and other expenses attending the defence of such actions, amounting in the whole to more than 8000 dollars. (See *Currier* v. *Lowell*, 16 Pick. 170.)

The trial was before *Morton* J. Joshua Swan, one of the selectmen of Lowell in 1832, testified that he was at the place in question shortly before the accident happened ; that the barriers were gone ; and that he told a person who was there giving directions about the work, that the barriers must not be down an hour ; and that such person answered, that he would replace them.

William A. Swan testified, that he worked for the plaintiffs in the autumn of 1832 ; and that shortly before the accident happened he found the poles, which constituted a part of the barriers, down, and that he replaced them.

It appeared, that on the 1st of October, 1832, John Noonan contracted with the defendants to construct that portion of the rail road where the accident happened.

It was admitted, that the deep cut across the road, was made by the persons employed by the defendants in constructing the rail road ; and that no surveyors had been chosen by the town of Lowell, for that year.

It was also admitted, that Morris Slatterly would, if present, have testified, that the barriers were put up and maintained by him, as a servant or agent of the defendants, and by their orders ; that none were put up or maintained by the plaintiffs ; that no engagement or promise was made by him with or to the plaintiffs, in relation to the barriers ; and that he had the care and supervision of them.

It was agreed between the parties, that the case should be submitted to the jury upon the question, whether, or not, the barriers were removed and left down by the servants of the defendants, while employed in the construction of the rail road.

The jury returned a verdict for the plaintiffs for the sum of $10,000. But it was agreed by the counsel, that the verdict should be increased, diminished, or set aside, and judgment entered, as the Court should direct

*Hoar* and *C. G Loring*, for the defendants The defendants were under no obligation to erect the barriers. All their rights and duties are created and distinctly prescribed by their

act of incorporation ; but it contains no provision imposing such an obligation on them. If the plaintiffs had chosen surveyors of highways, and these surveyors had erected the barriers, it would have been illegal for the defendants to take them down without putting them up again when they left off work ; but as the defendants erected them originally, they had a right to remove them and leave them down. The judgments recovered against the plaintiffs prove that they were not relieved by the acts of the defendants, from the duty of erecting such barriers. The defendants were authorized by their act of incorporation to cut through the highway, and they are liable for its consequences only in the manner provided by the statute. *Stevens* v. *Middlesex Canal Co.* 12 Mass. R. 466 ; *Stowell* v. *Flagg*, 11 Mass. R. 364 ; *Thurston* v. *Hancock*, 12 Mass. R. 220 ; *Callender* v. *Marsh*, 1 Pick. 418. But it will be contended, that the barriers having been once erected, the duty of the plaintiffs was discharged, and the defendants were bound to maintain them, or had no right to remove them. But there was no such privity between these parties as would constitute the defendants the servants or agents of the plaintiffs in this matter. Their interests were adverse. But if it be conceded, that the defendants were bound to erect barriers, it does not follow that they are responsible to the plaintiffs for their neglect of the same duty ; for it was, at least, a concurrent duty. The plaintiffs are precluded from denying that they were in fault ; for Currier and Smith could not have recovered against them if they had not had reasonable notice of the existence of the deep cut, and reasonable time to guard travellers against it. The policy of the law forbids the recovery of any indemnity by one party against another, where both are equally in fault ; especially where, as in the present case, indemnity is sought against a penalty. *Holman* v. *Johnson*, Cowp. 343 ; *Morck* v. *Abel*, 3 Bos. & Pul. 38 ; *Griswold* v. *Waddington*, 16 Johns. R. 487 ; *Harlow* v. *Humiston*, 6 Cowen, 189 ; *Vose* v. *Grant*, 15 Mass. R. 505 ; *Peck* v. *Ellis*, 2 Johns. Ch. R. 137 ; *Farebrother* v. *Ansley*, 1 Campb. 343 ; *Merryweather* v. *Nixan*, 8 T. R. 186 ; *Smith* v. *Smith*, 2 Pick. 621 ; *Riddle* v. *Proprietors of Locks and Canals*, 7 Mass. R. 169 ; *Waterhouse* v. *Waite*, 11 Mass. R. 207 ; *Wood* v. *Waterville*,

4 Mass. R. 422 ; *S. C.* 5 Mass. R. 294 ; *Drew* v. *New River Co.* 6 Carr. & Payne, 754.

The defendants were not responsible for the negligence of the persons employed in the construction of that section of the rail road where the accident happened, because it was let out to Noonan, who had contracted to construct it for a stipulated sum, and employed the workmen.

But if these workmen are to be deemed the servants or agents of the defendants, still, if the barriers were tortiously removed by them, the defendants would not be responsible for the consequences.

The plaintiffs cannot recover, because the damages sustained by them were the remote and not the immediate or natural consequence of the acts of the defendants.   The positive negligence of the plaintiffs, after notice, must have supervened, to render them liable to Currier and Smith.   *Salem Bank* v. *Gloucester Bank*, 17 Mass. R. 31 ; *Jackson* v. *Adams*, 9 Mass. R. 484 ; *Harris* v. *Baker*, 4 Maule & Selw. 27.

If the defendants are liable at all, they are not responsible for the double damages ; for the persons injured could, at any rate, have recovered only single damages against them.   *Jackson* v. *Adams*, 9 Mass. R. 484.

*Dexter, Robinson, Smith* and *Ames*, for the plaintiffs.   The claim of the plaintiffs is founded on the negligence of the defendants in doing an act authorized by their charter.   They were intrusted, by the legislature, with the execution of a public work, and were bound, in the construction of it, to take special precautions to protect the public against danger.   Com. Dig. (Day's ed.) *Action on the case for Negligence, A 2, A 3*, note ; Com. Dig. *Action on the case for Nuisance, C* ; *Sutton* v. *Johnstone*, 1 T. R. 509 ; *Weld* v. *Gas Light Co.* 1 Stark. R. 189 ; *Drew* v. *New River Co* 6 Carr. & Payne, 754 ; *Jones* v. *Bird*, 5 Barn. & Ald. 837 ; *Boulton* v. *Crowther*, 2 Barn. & Cressw. 703 ; *Matthews* v. *West London Water Works Co.* 3 Campb. 403 ; *Townsend* v. *Susquehanna Turnpike Co.* 6 Johns. R. 90 ; *Chestnut Hill Turnpike Co.* v. *Rutter*, 4 Serg. & Rawle, 6 ; *Bush* v. *Steinman*, 1 Bos. & Pul. 404.

This case is analogous to that of a master who has been

Lowell
v.
Boston and
Lowell
Rail Road
Corporation.

made responsible for the negligence of his servant, and who, t is well settled, may recover over against the servant. So here, the plaintiffs having been compelled to pay for a constructive wrong, have their remedy over against the actual wrong-doer. 1 Bl. Comm. (Chitty's ed.) 431, note 24 ; *Green v. New River Co.* 4 T. R. 589 ; 2 Stark. Ev. 768, 769 ; 3 Stark. Ev. 982, 983 ; *Brucker v. Fromont*, 6 T. R. 659.

It is true, that a party cannot lay a foundation for an action, in a wrong on his own part. But that principle is not applicable, unless *actual* negligence is proved. *Burckle v. New York Dry Dock Co.* 2 Hall's (N. York) R. 151. The defendants cannot say, that the plaintiffs were barred by their own negligence. The plaintiffs had no control over the highway, although their liability for damages sustained by travellers was not suspended. The defendants *inherited* the rights and duties of the town for the time being.

The barriers having been once placed across the highway, were adopted by the plaintiffs, and their duty in this behalf was discharged ; the defendants therefore were not authorized to remove them. If they had not been erected by the defendants, it must be presumed, that they would have been by the town.

If, however, there was *actual* negligence on the part of the plaintiffs, they cannot recover. The defendants, in order to prove such negligence, rely on the judgments recovered by Currier and Smith. Our answer is, that the plaintiffs were not sued for *actual* negligence, but because a certain state of facts existed which, by the statute, made them liable, to wit, the highway was out of repair, and they had notice of it.

The agents of the defendants were the last who used the highway, and it was therefore their duty to see that it was properly secured when they left off work. *Milne v. Smith,* 2 Dow, 390.

The damage sustained by the plaintiffs was not too remote and consequential to be the foundation of an action against the defendants. Com. Dig. *Action upon the case for Nuisance, C.*

It is suggested that though single damages may not be remote and consequential, yet that double damages are so. But

if the fault of the defendants creates the plaintiffs' liability to double damages, they are not more remote and consequential than single damages.

WILDE J. delivered the opinion of the Court. Several important and interesting questions are involved in the decision of this case, which have been ably argued by counsel, and which we have taken time to consider with the attention and deliberation that their importance and difficulty seemed to require.

Our first impressions as to one of the questions, on which the decision of the case depends, were not free from doubt. No adjudged case has been found in all respects similar; but reasoning from analogy, taking into consideration the principles of law, and the decided cases which have the closest application to the question in dispute, we have been brought to a conclusion which appears to us satisfactory, and which will enable us to administer justice between the parties without violating any known rule of law.

The facts on which the plaintiffs rest their claim, have not been disputed except in one particular, which has been ascertained by the jury in favor of the plaintiffs.

By the report of the case it appears, that the defendants, being authorized by law to construct a rail road from Boston to Lowell, had occasion, in so doing, to cut across and through one of the highways situated in Lowell, and which the plaintiffs were bound by law to keep in repair, whereby it became necessary to place barriers across the highway to prevent travellers from falling into the chasm or deep cut made by the defendants. Barriers were accordingly so placed by them. Afterwards it became necessary for the defendants to make use of the highway for the purpose of removing stone and rubbish from the deep cut, and the barriers were removed by persons in the defendants' employ, who neglected to replace them; in consequence whereof, two persons driving along the highway in the night time, were precipitated into the deep cut, and were greatly injured, and, on account thereof, recovered large damages against the plaintiffs, which the plaintiffs have been compelled to pay. The amount thus paid they claim the right to recover of the defendants in this action, they having become

3 *

liable by law to pay, and this liability having been incurred, in consequence of the negligence of the defendants' agents.

The defendants resist this claim on several grounds.

1. The principles, or most of the principles, on which the defendants rely, as the first ground of defence, may well be admitted; but they furnish no criterion by which we can be guided to a legal and just decision. It is undoubtedly true, that the defendants had a right to make the excavation in the highway. And they were not bound to erect barriers across the way, provided they had given seasonable notice to the officers of the town of their intended operations. So, after barriers were erected, the defendants might take them down from time to time, if necessary, for the purpose of removing rocks and rubbish, which could not be otherwise removed. These acts the defendants were authorized to do, and cannot be responsible to any one for consequential damages. But the plaintiffs' claim of indemnity is not for damages arising from these acts; they do not controvert the defendants' right to make the excavation in the highway, or to take down the barriers when necessary. The action is founded on the negligence of the defendants' agents and servants, in not replacing the barriers when the works were left, the day before the accident happened. These barriers, although voluntarily erected by the defendants, were approved and adopted by the selectmen of the town; and if the defendants were under the necessity of removing them for the purpose of making use of the road, they were bound to replace them when the necessity of using the road ceased, or, at least, every evening when their agents or laborers left the works. This was imperatively required by a due regard to public safety; otherwise an accident might happen before the town had notice, actual or constructive, and no one would be responsible for the damages. It is not true, as has been contended by the defendants' counsel, that all the defendants' duties and liabilities are created and prescribed by their act of incorporation. Corporations as well as individuals, by the principles of the common law, are bound so to exercise their rights as not to injure others. The principle, *sic utere tuo, ut alienum non lœdas,* is of universal application.

2. But the defendants deny their responsibility for the negligence of the persons employed in the construction of that part of the rail road where the accident happened, because this section thereof had been let out to one Noonan, who had contracted to make the same for a stipulated sum, and who employed the workmen. We do not, however, think that this circumstance relieves the defendants from their responsibility. The work was done for their benefit, under their authority, and by their direction. They are therefore to be regarded as the principals, and it is immaterial, whether the work was done under contract for a stipulated sum, or by workmen employed directly by the defendants at day wages. This question was very fully discussed and settled in the case of *Bush* v. *Steinman*, 1 Bos. & Pul. 403. In that case it appeared, that the defendants had contracted with A. to repair his house for a stipulated sum  A. contracted with B. to do the work; and B. contracted with C. to furnish the materials. The servant of C. brought a quantity of lime to the house and placed it in the road, by which the plaintiff's carriage was overturned. And it was held, that the defendant was answerable for the damage. This decision is fully supported by the authorities cited and by well-established principles.

3. Another objection to the plaintiffs' claim was made in argument, which cannot be sustained. It is objected, that the defendants are not answerable for the tortious acts of their agents or servants. And this is true, if the acts were accompanied with force, for which an action of trespass *vi et armis* would lie, or were wilfully done. But the acts complained of were not so done. The defendants' workmen had a right to remove the barriers for a necessary purpose. Their only fault was their neglect in not replacing them at night when they left their work. For this negligence or non-feasance the defendants were clearly answerable.

Thus far then the case is free from all difficulty. The defendants were answerable to the parties injured for all damages. But the doubt is, whether they are responsible to the plaintiffs.

4. It has been urged that the plaintiffs or their officers have been guilty of neglect, as well as the agents of the defendants; that it was their especial duty to see to it that their roads and

streets were kept in good repair and safe for travellers ; and that they, therefore, being culpable, and *participes criminis*, are not, by the policy of the law, allowed to recover damages, as an indemnity, against their co-delinquents.

This objection is certainly entitled to much consideration. The general rule of law is, that where two parties participate in the commission of a criminal act, and one party suffers damage thereby, he is not entitled to indemnity, or contribution, from the other party. So also is the rule of the civil law. *Nemo ex delicto consequi potest actionem.* The French law is more indulgent, and allows a trespasser, who has paid the whole damage, to maintain an action for contribution against his co-trespasser. Pothier on Oblig. 282. Whether the latter rule be or be not founded on a wiser policy and more equal justice, is a question which we are not called upon to decide. This case, like all others, must be decided by the law as it is, whether it be consonant with sound policy or not.

Our law, however, does not in every case disallow an action, by one wrong-doer against another, to recover damages incurred in consequence of their joint offence. The rule is, *in pari delicto potior est conditio defendentis.* If the parties are not equally criminal, the principal delinquent may be held responsible to his co-delinquent for damages incurred by their joint offence. In respect to offences, in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But where the offence is merely *malum prohibitum*, and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrong-doers.

This distinction was very fully considered in a case recently decided by this Court. *White* v. *Franklin Bank*, 22 Pick. 181. In that case the plaintiff had deposited in the bank a large sum of money payable at a future day, in violation of a provision in the Revised Statutes, which prohibits any such deposit or loan. Both parties were culpable, but as the defendants were deemed the principal offenders, it was held, that the plaintiff was entitled to recover back his deposit.

No one will question the manifest justice of that decision ; and it is fully sustained by the authorities. The cases, for instance, where persons who had paid more than lawful interest on usurious contracts, have been allowed to recover back the surplus, although they were parties in illegal transactions, were decided on the same distinction. So, in *Smith* v. *Bromley*, 2 Dougl. 696, which is a leading case on this point. The plaintiff, who was the sister of a bankrupt, was persuaded to pay the defendant a certain sum of money, which he exacted as the condition upon which he would consent to sign the bankrupt's certificate ; and it was held, that although the transaction was illegal, the plaintiff was entitled to recover back the money paid, she not being *in pari delicto* with the defendant. So money paid to a plaintiff in a *qui tam* action, in order to compromise the action contrary to the prohibition of the *St.* 18 *Eliz. c.* 5, was recovered back in the case of *Williams* v. *Hedley*, 8 East, 378. So in *Jacques* v. *Golightly*, 2 Wm. Bl. 1073, it was held, that money paid to a lottery office keeper, as a premium for an illegal insurance, might be recovered back in an action for money had and received.

In all these instances, the defendants were deemed the principal offenders, and the cases were decided on the distinction already stated. This distinction, Chief Justice *Parker* says, " is founded in sound principle, and is worthy of adoption as a principle of common law in this country." *Worcester* v. *Eaton*, 11 Mass. R. 377.

The principle established by these cases arising from illegal contracts, has long been admitted in certain cases of torts, where the parties were not *in pari delicto.* If a servant, in obedience to the command of his master, commits a trespass upon the property of another, not knowing that he is doing any injury, he is nevertheless answerable for the tort as well as his master, to the party injured ; yet he is entitled to an action against his master for the damages he may suffer, although the master also was ignorant, that the act commanded was unlawful ; because he is deemed the principal offender. So, if a sheriff's deputy takes the property of A. on a writ or execution against B. and A. recovers damages of the sheriff for the trespass, he may maintain an action for indemnity against his deputy ;

<div style="margin-right-note">

Lowell
*v.*
Boston and
Lowell
Rail Road
Corporation.

</div>

and, in a like case, if the property be taken by the command of the plaintiff in the writ or execution against B. under a promise of indemnity, the deputy may maintain an action against the creditor on his promise, although the deputy be himself a trespasser. So, also, if A., with a forged warrant, should arrest B., and command C., to whom he shows his warrant, to confine B. a reasonable time, until he could carry him to prison, and C., being ignorant of the forgery, confines him accordingly, an action for indemnity by C. against A. would lie, notwithstanding both parties were trespassers. *Fletcher* v. *Harcot*, Hutt. 55 ; 1 Roll. Abr. 95, 98. The distinction in all these cases is the same. The parties are not *in pari delicto*, and the principal offender is held responsible.

This distinction is manifest in the case under consideration. The defendants' agent, who had the superintendence of their works, was the first and principal wrong-doer. It was his duty to see to it that the barriers were put up when the works were left at night ; his omission to do it was gross negligence ; and for this, the defendants were clearly responsible to the parties injured.

In this negligence of the defendants' agent, the plaintiffs had no participation. Their subsequent negligence was rather constructive than actual. The most that can be said of it is, that one of their selectmen confided in the promise of the defendants' agent to keep up the barriers ; and by this misplaced confidence the plaintiffs have been held responsible for damages to the injured parties. If the defendants had been prosecuted instead of the town, they must have been held liable for damages, and from this liability they have been relieved by the plaintiffs. It cannot therefore be controverted, that the plaintiffs' claim is founded in manifest equity. The defendants are bound in justice to indemnify them so far as they have been relieved from a legal liability ; and the policy of the law does not in the present instance interfere with the claim of justice. The circumstances of the case distinguish it from those cases, where both parties are *in pari delicto*, and one of them, having paid the whole damages, sues the other for contribution.

From a view of the evidence reported, and the finding of the jury, we are to consider, that the defendants' agents or ser-

vants were, while employed in the construction of the railroad, the principal, if not the only, actual delinquents, and that for their delinquency the defendants are responsible to all persons suffering damage thereby ; and they, in their turn, may maintain an action for indemnity against their negligent agents or servants. Unless, therefore, the plaintiffs are estopped by some inflexible principle of law, they are entitled to indemnity, so far as they have suffered a loss by the fault of the defendants' servants ; and holding as we do, for the reasons stated, that they are not so estopped, we are of opinion, that they are entitled to recover.

They are not, however, entitled to a full indemnity, but only to the extent of single damages. To this extent only were the defendants liable to the parties injured ; and so far as the plaintiffs have been held liable beyond that extent, they have suffered from their own neglect ; and whether it was actual or constructive, is immaterial. The damages were doubled by reason of the neglect of the town ; and although there was, in fact, no actual negligence, yet constructive negligence was sufficient to maintain the action against them ; and they must be responsible for the increased amount of damages, and cannot throw the burden on the defendants.

The only remaining question relates to the costs of the former action against the town. And we are of opinion, that the plaintiffs are not entitled to recover any part of those costs. The ground of defence in that action, on the part of the town, was, that they had no sufficient notice of the defect in the road, and that the remedy for the injured party was against the present defendants. The suit therefore was not defended at the request of the defendants or for their benefit ; at least, no such request has been proved ; and the ground of defence taken by the town in the former action, is well remembered, although it does not appear in the present report. If the claim of the injured parties had been made on the defendants, or if they had had notice that the town defended the suit against them in behalf of the defendants, they might have compromised the claim. But however this may be, we think there is no ground on which the defendants can be held liable for the costs and expenses of the suit against the town.

*Judgment for the plaintiffs.*