This is an action to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The facts, as we must assume they were found by the jury, are these: The intestate, a man about sixty-seven years of age, was, on the day of his death, in Schuyler street, Utica, engaged in peddling kindling wood, with a horse and wagon, going northerly. The defendant's railroad track was laid through the centre of that street, upon its surface, the top of the iron rails being about four and one-half inches above such surface. There was no planking or filling between the rails to facilitate the passage of vehicles across the track. The intestate left his horse and wagon on the easterly side of the track, near the edge of the sidewalk, and stepped across the walk, about six feet from the hind end of the wagon, to solicit a person to purchase some of his wood, and while there the train came in sight from the north and frightened his horse, which turned and started across the railroad track in a south-westerly direction, and crossed over both rails to the westerly side of the track, and drew the wagon over the easterly rail and three wheels over the westerly rail, the left hind wheel sliding along the rail as the horse drew in a south-westerly direction. About the time the horse started the attention *Page 216 
of the intestate was called to the approaching train, which was then between two and three hundred feet distant, and he at once started to catch his horse. He ran across the track and seized hold of the horse's harness, the horse's head then being from six to eight feet from the westerly rail, and while he was there, between the westerly rail and the horse, the engine struck the sliding hind wheel and drove the fore-wheel against the intestate, and he was thrown upon the track in front of the engine and killed.
It is claimed on behalf of the defendant that the evidence failed to show any negligence on its part, and did show negligence on the part of the intestate.
As to the negligence of the defendant: The defendant was the lessee of the Utica, Chenango and Susquehanna Valley Railroad Company, which built this railroad under the general railroad act of 1850. By that act authority was given to build railroads in streets; but the streets were to be restored to their former state, or to such state as not unnecessarily to impair their usefulness. Schuyler street was not restored to its former state, and it was at least a question of fact for the jury whether its usefulness was not unnecessarily impaired. It is very probable that this accident would not have occurred if there had been some filling on the side of the rails, so that the wheels of the wagon could readily have passed over them. The defendant cannot escape liability for this condition of the railroad, because it was simply the lessee of the road. It had the possession, the use and the control of the road, and could not keep and maintain the rails in such way in the street as to be dangerous to travelers thereon, and yet escape responsibility. He who knowingly maintains a nuisance is just as responsible as he who created it: (Moshier v. The Utica and Schenectady R.R. Co., 8 Barb., 427;Brown v. The Cayuga and Susquehanna R.R. Co., 12 N.Y., 486.) Besides it appears that the rails in use at the time of this accident were such as were placed there by the defendant. Thus there is one ground of negligence. There is another. There was a city ordinance which allowed *Page 217 
the defendant to run its trains within the city of Utica, not to exceed eight miles an hour, and there was evidence that the train on this occasion was running at the rate of twelve miles per hour; and this evidence was competent as bearing upon the question of defendant's negligence: (Massoth v. Del. and Hud.Canal Co., 64 N.Y., 524.)
As to the negligence of the intestate: He was lawfully in the street, engaged in a lawful business. There is no absolute rule of law that requires one who has a horse in a street to tie him, or to hold him by the reins. It would doubtless be careless to leave a horse in a street wholly unattended without tying him to something. But it is common for persons doing business in streets with horses, to leave them standing in their immediate presence while they attend to the business, and it is not unlawful for them to do so. It is commonly safe so to do, and accidents are rarely occasioned thereby. There was no proof that this horse was vicious, unsafe or unmanageable. He was left about twelve feet from the easterly rail of the railroad track. It was not shown that the intestate knew that a train was at that time to be expected. He was near his horse, and might expect, in an emergency, to control him by his voice, or to reach him before he could escape. Whether he acted prudently under such circumstances, in leaving his horse there, was a matter to be determined by the jury upon the evidence: (Southworth v. OldColony and Newport Railway Co., 105 Mass., 342.) It cannot be said, as matter of law, that he violated the city ordinance, which forbade any person leaving a horse in any street unless securely tied. The jury could have found, and we may assume that they did find that this horse was not left in the street, within the meaning of this ordinance, while he was in the immediate presence of his owner. It cannot be supposed that it was intended by this ordinance to require all vendors or peddlers of commodities in the streets of the city to tie their horses, or have some one hold them, while they are momentarily engaged in delivering their commodities to persons in the streets or at doors of the *Page 218 
houses along the streets; nor can it be supposed that it was intended to inflict a penalty upon every person who should fail to tie or hold his horses in the street while standing near them. The ordinance was manifestly intended to reach the cases of persons who might leave their horses in the streets not tied, and go away from them out of sight, or to such a distance as to lose that control which persons may usually exercise over horses when near them. It only remains, then, to be considered whether the intestate was in fault for trying to catch his horse. The horse and wagon had some value, and we may assume, from the humble occupation in which the intestate was engaged, that they were of great value to him. He had the right, and was under some sort of duty to rescue them from danger if he could. He, therefore, had business in the place where he was when he was killed. It cannot be said that he went there for no purpose, and that he unnecessarily placed himself in danger. The whole transaction took but a moment. He saw the train coming. The impulse to save his property was a natural one. He had no time for reflection. He saw how distant the train was, and supposing that he could rescue his horse, started. He got across the track, and would have been safe, but for the sliding of the wagon wheel in consequence of the elevated rail. It is easy enough now to see that his effort was a hazardous and unsafe one. But can we say, as matter of law, that he, situated just as he was, with no time for cool reflection, failed in that care which men of ordinary prudence would exercise under the same circumstances? We think not.
But even if the intestate were chargeable with carelessness in leaving his horse in the street, so that he could not have recovered for the loss of his horse if he had been killed, and so that he would have been liable for any damage done by his horse, yet the case would not have been different. Such carelessness would not have been, in any proper sense, the immediate or proximate cause of the accident. He would not, therefore, have forfeited his horse, or have been absolved from the moral duty to secure him from danger. The question *Page 219 
would then have been as it is now, whether, under all the circumstances, he exercised ordinary prudence in his efforts to catch his horse.
The case of Gray v. The Second Avenue R.R. Co. (65 N.Y., 561) — much relied on by the learned counsel for the defendant — is not in conflict with any of the views above expressed. It is clearly distinguishable from this case, as can be seen by an examination of the opinion at large, on file with the clerk of this court.
This case was, therefore, a proper one for the jury; and their determination, under a charge not complained of, concludes us.
The judgment should be affirmed, with costs.
All concur, except RAPALLO, J., not voting.
Judgment affirmed.