[S. F. No. 20504. In Bank. Mar. 6, 1961.]

COUNTY OF ALAMEDA, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Cross-complainant and Appellant; CALIFORNIA ROCK AND GRAVEL COMPANY (a Corporation), Cross-defendant and Appellant.

Herbert A. Waterman for Cross-complainant and Appellant.

Hardin, Fletcher, Cook & Hayes and Cyril Viadro for Cross-defendant and Appellant.

J. Frank Coakley, District Attorney, Appelbaum, Mitchell & Bennett and Bryant M. Bennett for Respondent.

DOOLING, J.—The county of Alameda (hereinafter called the county) filed a complaint against Southern Pacific Company (hereinafter called Southern Pacific) and California Rock and Gravel Co. (hereinafter called Rock) for indemnity, arising out of the following facts: On October 25, 1932, by resolution the county granted Rock a permit to construct, maintain and operate a spur track across a certain county road from the Southern Pacific tracks to Rock's property. This was to be used by Southern Pacific to haul gravel from Rock's property. The permit required Rock to "place the road ways back in the same condition as they were before said excavation was made" and further, that in case of the revocation or abandonment of the permit Rock would remove the tracks and restore the surface of the crossing to its original condition. On October 28, 1932, Southern Pacific applied to the California Railroad Commission for authority to construct the same spur track and on November 21, 1932, the commission granted it such authority, providing in its order that Southern Pacific should bear "the entire expense of constructing and thereafter maintaining" such crossing. The crossing was actually constructed by Rock under its permit from the county. On December 28, 1932, Southern Pacific and Rock entered into a written "industrial track agreement" under which Southern Pacific agreed "to operate said track and to serve Industry [Rock] thereon" under terms and conditions therein agreed to by the parties, and providing further that "said track shall be under full control of Railroad [Southern Pacific] and may be used at discretion of Railroad for its business or for shipment or delivery of any freight, but not to the detriment of the business of the Industry." Thereafter, Southern Pacific operated trains regularly across said track for the purpose of

hauling gravel from Rock's plant. For at least some considerable time before the accident which led to the present action Southern Pacific regularly operated four trains daily (two in each direction) over this spur track.

In 1951 the county gave written notice to Southern Pacific that the crossing was in need of repairs. In 1953 Southern Pacific sent a letter to Rock advising it that repairs should be made to said crossing and offering to make them at Rock's expense. However neither company made any repairs to the crossing, and on March 4, 1954, a truck owned by R. Cali & Bro. (hereinafter called Cali) went out of control while attempting to cross the spur track and was damaged thereby. The evidence showed that there was a break in the pavement adjacent to the spur track and this caused the truck to go out of control.

Cali filed an action against the county, Southern Pacific and Rock for the damage to its truck. Rock was granted a nonsuit in this action and Cali recovered judgment for $5,596.23 against the county and Southern Pacific. The county paid one-half of this judgment and Southern Pacific paid the other one-half. Thereupon the county brought this action for indemnification against Southern Pacific and Rock for the amount paid on the Cali judgment by the county, plus costs and reasonable attorney's fees. Southern Pacific in turn filed a cross-complaint against Rock for indemnification.

Judgment was entered after trial for the county against Southern Pacific and Rock on the complaint, and for Southern Pacific against Rock on its cross-complaint. Both Southern Pacific and Rock have appealed.

### The Judgment for the County

The county properly relies upon *City & County of San Francisco* v. *Ho Sing*, 51 Cal.2d 127 [330 P.2d 802], to support its judgment against both corporations. [██ Rock as the property owner which constructed the track across the highway for the benefit of its property was under a common-law duty to maintain the crossing in a safe condition for travel (*City & County of San Francisco* v. *Ho Sing, supra,* 51 Cal.2d, p. 129) and the county is entitled to recover over against Rock by way of indemnity for the amount it was out of pocket by reason of Rock's negligent failure to properly maintain the crossing (*Id.,* 51 Cal.2d at p. 138).

██ Rock argues that under its contract with the county it was only bound to place the road back in its former condi-

tion and was under no duty thereafter to maintain it. However cases in other jurisdictions have construed similar provisions to impose a continuing duty of maintaining the crossing so long as it remains in the highway, and not to limit the duty to a single restoration. (*City of Iola* v. *Missouri Pac. Ry. Co.*, 97 Kan. 242 [155 P. 45, 46-47]; *Southern Ry. Co.* v. *Morris*, 143 Ala. 628 [42 So. 17, 18]; *Chesapeake, O. & S. W. R. Co.* v. *Dyer County*, 87 Tenn. 712 [11 S.W. 943, 944]; *Town of Clarendon* v. *Rutland R. Co.*, 75 Vt. 6 [52 A. 1057, 1059-1060]; *Village of Wayzata* v. *Great Northern Ry. Co.*, 50 Minn. 438 [52 N.W. 913, 914]; *Maltby* v. *Chicago & W. M. R. Co.*, 52 Mich. 108 [17 N.W. 717].)

▮ While Ho Sing dealt only with the duty of an adjoining property owner placing an artificial structure in the thoroughfare for the benefit of his property, the principle extends to any person or corporation placing or maintaining a structure in the highway for his own purposes. ▮ So the common-law duty is cast upon a railroad company to safely maintain the crossing over its tracks where they occupy a portion of the highway. (*Bullock* v. *Yakima Valley Transp. Co.*, 108 Wash. 413 [184 P. 641, 647-648, 187 P. 410]; *Chicago, R. I. & P. Ry. Co.* v. *Taylor*, 79 Okla. 349 [192 P. 349, 352]; *Patterson* v. *Thompson* (Mo.App.), 277 S.W.2d 314, 317; *State* v. *Minnesota Transfer Ry. Co.*, 80 Minn. 108 [83 N.W. 32, 34]; *Omaha & R. V. Ry. Co.* v. *Brady*, 39 Neb. 27 [57 N.W. 767, 768]; *People* ex rel. *City of Bloomington* v. *Chicago & A. R. R. Co.*, 67 Ill. 118.) This duty rests not only on the corporation which originally constructed the tracks but likewise attaches to whatever railroad company thereafter "exercises the franchise." (*Wichita Valley Ry. Co.* v. *Meyers* (Tex. Civ. App.), 248 S.W. 444, 446-447; *Attwill* v. *Boston & A.R. Co.*, 246 Mass. 292 [140 N.E. 928, 929]; *Wasmer* v. *Delaware, Lacka. & West'n. R.R. Co* (N.Y.), 80 N.Y. 212, 216 [36 Am. Rep. 608]; *Allen* v. *Buffalo, R. & P. Ry. Co.*, 151 N.Y. 434 [45 N.E. 845, 847]; *People* ex rel. *City of Bloomington* v. *Chicago & A. R. R. Co.*, *supra*, 67 Ill. 118, 120; cf. *Alton R. Co.* v. *Illinois Commerce Comm'n.*, 305 U.S. 548, 553 [59 S.Ct. 340, 83 L.Ed. 344] et seq.; *Snyder* v. *Southern Calif. Edison Co.*, 44 Cal.2d 793, 799 [285 P.2d 912].) ▮ Southern Pacific, having by its contract with Rock obtained the right "to operate said track . . . under (its) full control" and having regularly operated its trains thereafter under said contract, cannot escape this liability of maintenance which the law casts upon it. Since it was under this legal responsi-

bility for maintenance, the county is likewise entitled to indemnity against it. (*Washington Gaslight Co.* v. *District of Columbia,* 161 U.S. 316 [16 S.Ct. 564, 40 L.Ed. 712]; *Lowell* v. *Boston & Lowell Railroad,* 40 Mass. (23 Pick.) 24 [34 Am.Dec. 33]; *Town of Waterbury* v. *Waterbury Traction Co.,* 74 Conn. 152 [50 A. 3]; *Baltimore & O. R. Co.* v. *Howard County Com'rs.,* 111 Md. 176 [73 A. 656, 40 L.R.A. N.S. 1172], *id.* on second appeal, 113 Md. 404 [77 A. 930]; *City of Astoria* v. *Astoria & C. R. R. Co.,* 67 Ore. 538 [136 P. 645, 49 L.R.A. N.S. 404]; *City of Raleigh* v. *North Carolina R. Co.,* 129 N.C. 265 [40 S.E. 2]; *Portland* v. *Atlantic & St. Lawrence Railroad Co.,* 66 Me. 485; *City of Bloomington* v. *Chicago, I. & L. R. Co.,* 52 Ind. 510 [98 N.E. 188].)

 The court found that both corporate defendants negligently failed to maintain said crossing in a safe condition and as a proximate result thereof, ruts, holes and depressions were caused to exist at said crossing and immediately adjacent to the rails thereof, and that as a result thereof the Cali truck was caused to be thrown out of control and damaged. These findings sufficiently support the judgment for the county. There is some uncertainty in the findings as to whether these ruts were within 2 or 4 feet of the rails. There was testimony that it was the customary practice for railroads to maintain the highway for 2 feet on either side of the rails and the testimony of the Cali driver was that the break in the pavement which threw his truck out of control was adjacent to the track.

 Findings are to be liberally construed whenever possible to support the judgment (*Richter* v. *Walker,* 36 Cal.2d 634, 639 [226 P.2d 593]; *Menghetti* v. *Dillon,* 10 Cal.2d 470, 472 [75 P.2d 596]), and it seems clear from the record that the break in question was within 2 feet of the rails. The fact that Cali recovered judgment against Southern Pacific in the original action lends further support to this conclusion.

The corporate defendants cite Restatement, Restitution, section 95: "Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, *unless after discovery of the danger, he acquiesced in the continuation of the condition.*" (Emphasis added.) The defense that the

county acquiesced in the condition was not urged in the trial court and under settled principles of appellate practice it is too late to present this defense for the first time on appeal (*Damiani* v. *Albert*, 48 Cal.2d 15, 18 [306 P.2d 780]; *Los Angeles Inv. Co.* v. *Home Sav. Bank*, 180 Cal. 601, 615 [182 P. 293, 5 A.L.R. 1193]), assuming, without deciding, that such defense is available against a governmental subdivision.[1]

Since the principles herein stated sufficiently support the county's judgment, other theories advanced by the county for recovery need not be discussed.

### The Judgment for Southern Pacific Against Rock

Southern Pacific's claim for recovery over against Rock is based upon its claim that under its "industrial track agreement" with Rock the duty of maintaining the crossing was assumed by Rock and Rock's breach of this contract duty resulted in Cali's damages, for which Southern Pacific was compelled to pay. The portions of the industrial track agreement relevant to the consideration of this claim read as follows: "4. Railroad agrees to operate said track and to serve Industry thereon, subject to any lawful charges that may be made by Railroad for such service; said track shall be under full control of Railroad and may be used at discretion of Railroad for its business or for shipment or delivery of any freight, but not to the detriment of the business of the Industry. . . .

"6. Industry hereby releases and discharges and agrees to indemnify and save harmless said Railroad, its agents, successors and assigns, from all liability for destruction of, or damage to any property of the Industry and any property in the possession or custody of Industry by fire, resulting directly or indirectly from the operation of said track by Railroad, its agents, successors or assigns. . . .

"8. Railroad shall, at its own cost and expense, construct and thereafter maintain that portion of said track and its appurtenances extending from the point of initial switch thereof, where said track diverges from the track of Railroad, to the clearance point in the center line thereof, which said clearance point is thirteen (13) feet distant measured at right angles from the center line of the track from which said track diverges, and Industry shall, at its own cost and expense,

---

[1]No case has been cited where this rule was applied to defeat recovery by a governmental subdivision and it is unnecessary for us to decide the question in this case.

construct and thereafter maintain the remaining portion of said track and its appurtenances.

"9. In the event Industry fails, neglects or refuses to maintain the portion of said track and its appurtenances, which under the terms of this agreement it has agreed to maintain, in good condition and repair and to the satisfaction of Railroad for the operation of trains and cars thereon and thereover, Railroad may perform such work as may be necessary, at the expense of Industry, which expense Industry agrees to pay. . . .

"11. In addition to and not in qualification of the provisions of Section 6 of this agreement, Industry hereby releases and discharges and agrees to indemnify and save harmless said Railroad, its agents, successors and assigns, from all liability resulting directly or indirectly from the operation over said track by Industry of its locomotive crane and/or any other equipment of Industry."

It is admitted that by section 8 of the industrial track agreement Rock bound itself to maintain the portion of the spur track which was constructed upon and across the highway, including the area in which the accident to the Cali equipment occurred. It is Southern Pacific's theory, which was adopted by the trial court, that the breach of this contractual duty by Rock proximately and foreseeably led to the accident to the Cali truck and the necessity of Southern Pacific's responding in damages therefor. ■ Southern Pacific therefore argues that it is not an action for indemnification but rather a simple contract action for the damages proximately resulting to it from Rock's breach of the contract to maintain. But the cases in California upon which Southern Pacific relies have treated such an action based upon the violation of a contract duty to the plaintiff by the defendant which resulted in a tort judgment against the plaintiff by a third person as being upon a cause of action on an implied promise to indemnify (*De La Forest* v. *Yandle*, 171 Cal.App.2d 59, 61-62 [340 P.2d 52]; *San Francisco Unified Sch. Dist.* v. *California Bldg. etc. Co.*, 162 Cal.App.2d 434, 440, 449 [328 P.2d 785]) and the cases cited and discussed in the latter case (162 Cal. App.2d at pp. 444-448) indicate that courts generally, where they allow such an action, treat it as one for recovery on an implied promise to indemnify the promisee for damages which the promisee is compelled to pay because of the breach by the promisor of his express promise.

Rock argues that there can be no implied promise here to indemnify Southern Pacific because the contract construed as a whole negatives the inference of such implied promise. In this we are satisfied that Rock is correct. ██ ''Where parties have entered into written engagements which industriously express the obligations which each is to assume, the courts should be reluctant to enlarge them by implication as to important matters. The presumption is that having expressed some they have expressed all of the conditions by which they intended to be bound.'' (*Foley* v. *Euless,* 214 Cal. 506, 512 [6 P.2d 956] ; *Loyalton etc. Co.* v. *California etc. Co.,* 22 Cal.App. 75, 77 [133 P. 323].) ██ The industrial track agreement contains two express provisions by which Rock agrees to indemnify Southern Pacific for Southern Pacific's liability for negligence, i.e., paragraphs 6 and 11. It expresses the obligation of indemnity in paragraph 11 to be '' [i]n addition to and not in qualification of the provisions of Section 6 of this agreement.'' Since the parties industriously expressed these provisions for indemnity, we should be reluctant to engage Rock in another separate and independent obligation of indemnity by implication. The contract itself in paragraph 9 thereof gave an express remedy to Southern Pacific by providing that if Rock failed in its duty of maintenance, Southern Pacific could itself do the necessary work at Rock's expense. ██ Finally Southern Pacific prepared the contract, and it is thus to be strictly construed against it. (Civ. Code, § 1654; *Weil* v. *California Bank,* 219 Cal. 538, 541 [27 P.2d 904] ; *Payne* v. *Neuval,* 155 Cal. 46, 50 [99 P. 476].) ██ It is reasonable to conclude that Southern Pacific, having carefully provided in express terms for indemnity for its own negligence in two particulars, would have likewise made express provision for indemnity against liability based on its negligent failure to maintain the spur track in proper condition if it had intended to bind Rock to such an obligation.

The judgment in favor of the county of Alameda on the complaint is affirmed. The judgment in favor of Southern Pacific Company on its cross-complaint is reversed.

Gibson, C. J., Traynor, J., Peters, J., and White, J., concurred.

SCHAUER, J., Concurring and Dissenting.—I agree with the majority in reversing the judgment in favor of Southern

Pacific Company on its cross-complaint but I dissent from the order affirming the judgment in favor of the county of Alameda.

It is my view that to permit the county to recover over against Southern Pacific and Rock for damages which the county became obliged to pay to Cali by reason of the county's negligent failure to perform its own direct obligation (to Cali as one of the public) to maintain the county road in a safe condition, will tend to encourage further laxity on the part of the county and its officials (and other governmental representatives) in carrying out their duties of inspection and maintenance of the public roads. (See dissenting opinion in *City & County of San Francisco* v. *Ho Sing* (1958), 51 Cal.2d 127, 138-142 [330 P.2d 802].) The majority holding in this respect, I believe, constitutes a clear violation of public policy; it will tend to increase highway accidents by depriving the traveling public of the conditions of safety which they are entitled to expect when using the public streets and roads in this state. I would, therefore, reverse the judgment in favor of the county.

McCOMB, J.—I dissent. I would reverse the judgment, with directions to the trial court to enter a judgment for Southern Pacific on the complaint and for California Rock and Gravel Company on both the complaint and the cross-complaint.