Darrell SMITH, Appellant,

v.

The OHIO OIL COMPANY, Appellee.

No. 5519.

Court of Civil Appeals of Texas. El Paso.

April 4, 1962.

Rehearing Denied May 2, 1962.

Warren D. Barton, Garland Casebier, Midland, for appellant.

Stubbeman, McRae, Sealy & Laughlin, F. H. Pannill, Midland, J. O. Terrell Couch, Houston, of counsel, for appellee.

LANGDON, Chief Justice.

This is a summary judgment case. The principal question is whether a contractor, engaged by the owner of an oil and gas lease to perform work-over or reworking operations upon such oil and gas lease, is obligated to appellee, under the terms and provisions of an indemnity contract, to indemnify the owner against liability for injuries sustained by an employee of contractor, resulting from the negligence of the owner, the accident having occurred while contractor was performing work and services for the owner.

444

On or about March 31, 1953, The Ohio Oil Company (appellee) was the owner and operator of certain oil and gas wells in Lea County, New Mexico, and on that date appellee and Darrell Smith (appellant) entered into a written contract by the terms of which appellant agreed to perform certain work-over services on one of these wells operated by appellee in New Mexico. On or about April 18, 1953, one Alva A. Hunt, who was an employee of appellant, was injured while working for appellant in the performance of the work-over services under the contract. Hunt's injuries were sustained when he fell from a test tank owned by appellee The Ohio Oil Company and furnished to appellant for use in performing the work-over operations pursuant to the contract. It is admitted by all parties that the injuries sustained by the employee were serious.

As the result of the injuries sustained by Hunt, a suit was filed in the District Court of Lea County, New Mexico, on or about April 17, 1958, in which Alva A. Hunt and Houston Fire and Casualty Insurance Company were plaintiffs, and appellee herein was named defendant. Damages were sought in the sum of $250,000.00. Hunt alleged that his injuries were proximately caused by negligence on the part of The Ohio Oil Company in the performance of some duty which the company owed him. Appellant, Darrell Smith, had notice of the filing of the suit, but was not made a party thereto and refused to defend or participate in such suit when called upon to do so by The Ohio Oil Company. Appellant, Darrell Smith, having refused to defend the suit, appellee proceeded to compromise and settle the Hunt case, and an agreed judgment was entered therein. Thereafter, appellee instituted the instant suit in the District Court of Midland County, Texas, against appellant Darrell Smith, seeking recovery of $15,000.00 paid by it in satisfaction of the agreed judgment in the Hunt case, as well as attorneys' fees and other expenses incurred by it in the defense and settlement of such case.

From the summary judgment awarding appellee the sum of $19,206.50, appellant has perfected this appeal.

Appellant's first three points are based upon the contention that the indemnity provisions of the contract do not indemnify appellee against damages resulting from appellee's own negligent conduct; that the indemnifying provisions of the contract between appellant and appellee do not contain language covering the cause of action asserted by Hunt in the New Mexico case; and that the trial court erred in granting appellee judgment based on the amount paid to Alva A. Hunt in settlement of the New Mexico action.

Third party actions such as the one here involved have given rise to an ever-increasing number of law-suits where the single question involved is a determination of whether the provisions of an indemnity contract may be so construed as to indemnify a person against his own negligence.

The courts of almost every jurisdiction pay lip service, at least, to the general rule that " * * * contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms." Others say that such construction " * * * must be required by clear and explicit language of the contract." A federal court has held that "Under New York law, a person is not entitled to be indemnified against liability to which his own active negligence contributed unless the contract expresses that intention beyond all doubt." Thompson-Starrett Co., Inc. v. Otis Elevator Co., 271 N.Y. 36, 2 N.E.2d 35 (1936); County of Alameda v. Southern Pacific Co. et al., 55 Cal.2d 479, 11 Cal.Rptr. 751, 360 P.2d 327 (1961); Cozzi v. Owens Corning Fiber Glass Corp. et al., 59 N.J.Super. 570, 158 A.2d 231 (1960); Miller v. The Pennsylvania Railroad Co., 236 F.2d 295 (2 Cir. 1956). But, to the contrary, several recent cases can be found that allow indemnity for one's own negligence even though words of general import are used to express such

intent. Bounougias v. Republic Steel Corp., 277 F.2d 726 (7 Cir. 1960), where the language, "In the consequence of the carrying on by the Seller of the work," was held to express such intent; Princemont Construction Corp. v. Baltimore & Ohio Railroad Co., D.C.Mun.App., 131 A.2d 877 (1957)—"In connection with or growing out of the use of said premises"; Hartford Accident & Indemnity Co. v. Worden-Allen Co., 238 Wis. 124, 297 N.W. 436 (1941)—"Due to, arising from, or connected with your operations on this job"; Russell Continental Casualty Co. v. Shell Oil Co., Inc., 339 Ill.App. 168, 89 N.E.2d 415 (Ill.1949)—"Resulting from or arising in connection with any of contractor's operations"; St. Paul Mercury Indemnity Co. v. Kopp, Ohio App., 121 N.E.2d 23 (1954) —"Growing out of or in any way connected with the performance of the work." However, most text book authorities have adopted the rule of strict construction. 175 A.L.R. 144, Sec. 68.

■ We would draw a distinction between the cases involving the rental of equipment and lease agreements covering real and personal property, on the one hand, and cases involving agreements between owners and contractors on the other. In the first type of case the indemnitor is generally the lessee who agrees to take specified machinery, equipment, land, buildings or premises "in the condition in which he finds them"; the determination on the question of whether the subject matter of the lease is "safe" and whether it is suitable for the purposes for which it is to be leased are questions most often left up to the lessee. In addition, factors involving the degree of control, the exclusive nature of possession and other incidents of the relationship created by such agreements, when coupled with an agreement on the part of the lessee to "indemnify" or "hold harmless" the owner or lessor thereof from damages growing out of or connected with the lessee's use or occupancy of the instrumentality or premises, renders it unnecessary for the parties to say in so many words that the indemnitor intended to protect the indemnitee against liability for negligence. In such cases, "An obligation to hold harmless from claims, liability or damage resulting from a specified operation or instrumentality will be enforced in accordance with its terms even though the indemnitee may thereby be relieved of his own negligence." Mitchell's Inc. v. Friedman, 157 Tex. 424, 303 S.W. 2d 775 (1957).

In the Friedman case, supra, the question before the court was whether the original lessee in a building lease, who had assigned the leasehold estate with an agreement to remain responsible for the performance of all the lease terms, was obligated by the indemnity provisions of the lease to indemnify the lessor against liability for injuries received on the leased premises by a customer of the assignee. Friedman was the original lessee and had sub-let the building to Brockles. One Zobel, while in the building as a customer of Brockles, was injured when struck by plaster and lathing which fell from the ceiling. Suit was against the lessor and others. The lessor (Mitchell's Inc.) asserted by way of cross-action that Friedman (the original lessee) was obligated to hold it harmless from any damages which might be received by Zobel. In passing upon the question, Justice Walker, speaking for the Supreme Court of Texas, said:

"If Zobel's injuries were caused by improper construction, defects or want of repair of the building as the allegations of the petition seem to indicate, his claim falls within the express provisions of the indemnity agreement and petitioner (lessor) is entitled to insist that respondent (original lessee) discharge his obligations thereunder."

The indemnity agreement construed in the Friedman case related to a "specified instrumentality" (a building), which was the subject of the lease. The lessee agreed that the lessor would not be liable to the lessee, or to lessee's employees, patrons or

visitors, for any damage to persons or property, *due to the building on said premises or any appurtenance thereof being improperly constructed, or being or becoming out of repair, nor for any damages from any defects or want of repair of any part of the building of which the leased premises form a part.* The lessee also agreed to accept the building and premises as suitable for the purposes for which same were leased; he waived defects therein and agreed to hold the lessor harmless from all claims for any such damage.

■ An entirely different situation is presented in the usual owner-contractor agreement. The work to be performed seldom consists of a single "specified instrumentality" or of a single "specified operation", but may involve and consist of a number and variety of different instrumentalities and operations requiring different skills, techniques, and often special equipment and personnel. The hazard and risk inherent in each individual operation (required to complete the work called for) may also vary. Some operations may be under the joint control of the owner and the contractor; the agreement may provide that the contractor furnish all labor, materials and equipment used in the work to be performed; or it may require the contractor to use some tools, equipment or employees of the owner; the premises upon which the work is to be performed may be unsafe or be rendered unsafe by the owner during the progress of the work being performed by the contractor. Because of these and hundreds of other possible conditions which may exist or arise, over which the contractor may, or may not, have control, it seems to us that the "express negligence" rule is the better reasoned and fairest rule, and should be applied in cases such as are presented by the facts of the case now before us. The application of the rule involves no problems of construction, and presents but a single question: Is the negligence of the indemnitee expressly referred to?

We do not consider the "express negligence" rule to be either new or novel. It has long been applied to fact situations such as are presented here (involving an owner and contractor).

The basis and reasoning behind the rule is discussed in a 1907 Pennsylvania case, Perry v. Payne, 217 Pa. 252, 66 A. 553, 11 L.R.A.,N.S., 1173, wherein it is said:

"It is contrary to experience and against reason that the contractors should agree to indemnify Perry (owner) against the negligence of himself or his employés. It would make them insurers, and impose a liability upon the contractors, the extent of which would be uncertain and indefinite, and entirely in the hands of Perry. * * * A single act of negligence on the part of the owner or his employés, over whom the contractors would have no restraint or control whatever, might create a liability which a lifetime of successful business could not repay."

In the instant case the particular provisions of the indemnity agreement with which we are concerned read as follows:

"15. Ohio indemnified:

"Ohio shall not be liable or responsible for and Contractor shall save and hold harmless Ohio from and against any and all claims and damages of every kind, for injury to or death of any person or persons and for damage to or loss of property, arising out of or attributed, directly or indirectly to the operations of Contractor hereunder. Contractor shall likewise indemnify Ohio for any and all injury or damage to property belonging to Ohio, arising out of or in connection with or resulting from any and all acts or omissions of Contractor hereunder."

Paragraph 17(a) of such contract further provides as follows:

"17. Statutes to be complied with:

"(a) Contractor agrees to comply with the Workmen's Compensation Act of the State of New Mexico and to pay or cause to be paid all compensation, medical or hospital bills which may become due or payable thereunder, and to protect and indemnify Ohio from and against any and all liability by reason of injury of employees of Contractor. *Contractor shall furnish Ohio with a certificate from the State Agency charged with the administration of the Workmen's Compensation Act evidencing Contractor's compliance therewith.*" (Emphasis supplied)

■ The suit by Hunt in New Mexico against The Ohio Oil Company was based solely on negligence attributed to Ohio. Hunt had already recovered benefits due him under his employer's (appellant's) Workmen's Compensation policy, and the record before us reflects that such employee had been paid all compensation, medical or hospital bills due or payable thereunder. This we believe completely satisfied any obligation imposed upon appellant by virtue of the indemnity provisions of paragraph 17(a) set out above.

■ Paragraph 15 imposed three separate obligations upon the contractor as follows:

(1) for injury to or death of any person;

(2) for damage to or loss of property; and

(3) for injury or damage to property belonging to Ohio.

Under the provisions of paragraph 15, contractor agreed to save and hold harmless Ohio against all claims and damages of every kind with respect to items (1) and (2) "arising out of or attributed, directly or indirectly to the operations of Contractor hereunder." It is not contended that any property belonging to Ohio was injured or damaged "arising out of or in connection with or resulting from * * * (any) * * * act or omissions of the Contractor hereunder." We believe, therefore, that the only language of paragraph 15 which specifically refers to the injury or death of any person, for the purpose of attaching liability therefor to the contractor, are the words "arising out of or attributed, directly or indirectly to the operations of the Contractor hereunder." The negligence of Ohio is not referred to, and in such case, under the "express negligence" rule (discussed above), the contract could not be construed to indemnify Ohio against its own negligence, and no further inquiry or construction of the contract would even be required.

The entire contract is before us, and we have carefully examined not only the quoted excerpts above which were plead and relied upon by appellee to establish its cause of action against appellant, but we have also carefully examined the contract as a whole.

The words in the indemnity clause used by the contracting parties were words of general import. Therefore, if the parties did, in fact, intend that the contractor indemnify Ohio against its own negligence, such intent is not expressed in "unequivocal terms", nor is such construction "required by clear and explicit language"; neither can it be said that the contract "expresses that intention beyond all doubt."

■ Construction of indemnity contracts requires that the intention of the parties, or the scope of the indemnitor's undertaking, first be determined by ordinary rules of construction without indulging presumptions in favor of either the indemnitor or the indemnitee; but after the scope of the indemnitor's undertaking has been thus determined, he is entitled to have such undertaking strictly construed, and it will not be enlarged or extended by construction or implication beyond the terms of the contract, especially where the contract was prepared by the indemnitee. *42 C.J.S. Indemnity § 8b, p. 576.*

In the instant case appellant, as the indemnitor, undertook to indemnify Ohio against claims and damages of every kind for injury to or death of any person arising out of or attributed, directly or indirectly, to the *operations of the contractor*. The parties agreed that Ohio would furnish certain labor, material and services, and that contractor would furnish certain other materials, equipment and services, for which contractor was to be compensated on an hourly basis at the rate of $22.00 per hour. Ohio, among other things, agreed to furnish water, fuel, special fluids (drilling muds and emulsions), mud-testing equipment, tubing, packers, casingheads, Xmas tree, etc. It also agreed to furnish mud engineering service, cement and cementing service, electric log equipment and services, as well as the labor and material for roads and bridges to location, mud sumps and other earthen pits, the cellar and the labor for rat-hole and mouse-hole installed. The particular test tank from which the employee is alleged to have fallen was not one of the specified items required to be furnished by either party, although it is undisputed that the tank belonged to Ohio and was brought in, located, spotted and set up on the lease by Ohio. Appellant also contends that he had no control over the tank, had nothing to say about how it was to be used, or in what condition it was to be kept, and that he had no authority to make any changes, repairs or alterations in the use of the tank. Appellant's contentions with respect to the ownership and control of the test tank are asserted in a sworn affidavit, signed by appellant and attached to his answer and motion for summary judgment, and are not denied by appellee.

As we interpret the contract as a whole, we have concluded that the liability of the contractor for the injury or death of any person (except injuries or death for which he would be liable at common law or under the Workmen's Compensation laws of the State of New Mexico) was limited by express terms of the indemnity clause to claims and damages arising out of or attributed to "operations of the contractor hereunder". The term "operations" is used in two or more different senses in the contract. In the indemnity clause we believe it is used in the sense of what the contractor did, and refers to his action, agency, performance or influence in causing or bringing about the particular claim and damages against which Ohio seeks to be indemnified. Elsewhere in the contract the term "operations" is used to designate particular processes or procedures to be applied to the well under the work-over job. Exhibits "A" and "B" attached to the contract and made a part thereof are schedules of drilling equipment, materials and services and of the drilling operations to be performed. In these exhibits Ohio is identified as the "operator", and appellant Smith as "contractor." Under the terms of the agreement, *both* Ohio and the contractor were to perform or cause to be furnished certain specified services in connection with the work-over, as well as certain specified equipment and supplies. The test tank, however, was not one of the specified items required to be furnished by either party.

Since Ohio, in its capacity as owner and "operator" of the lease, was expressly obligated to do and perform (or furnish) certain services in connection with the work-over job, it may fairly and reasonably be assumed that not all "operations" under the contract were to be performed by contractor; but, to the contrary, it clearly appears that part of the operations were to be performed by Ohio, and if not by Ohio, by others (third parties) engaged by Ohio for that purpose.

From what we have said, it follows that we are of the opinion that the indemnity provisions of the contract were not broad enough to cover claims and damages caused by Ohio's own negligence, and we so hold. In our opinion the phrase "operations of Contractor hereunder" expressly limited the contractor's liability under the indemnity provisions of the con-

tract to something the contractor himself did. Assuming, as we believe we are entitled to do under the undisputed facts of this case, that the loss was caused by the defective condition of the test tank furnished by Ohio, no liability would attach to the contractor under the terms of the indemnity agreement by reason of the resulting claim and damage against Ohio, unless the contractor had agreed to insure Ohio against its own negligence. We do not believe it sufficient to merely establish that the accident occurred at a time when contractor was engaged in the performance of his work on the lease, or that it was one of his employees who was injured, where it is not contended that the accident was caused by some specific act, deed or influence of the contractor.

Where the "express negligence" rule is not applied, and a construction of the contract is required, especially in a case such as this, calling for the re-working or work-over of an oil well, the conditions are similar to those involving contracts calling for the construction of buildings or other improvements; in such cases, the scope and extent of the indemnity clause will be more strictly construed than would be the case if the indemnity clause was one involving a contract for the rental or lease of a building or equipment.

The damage or injury must be such as fairly falls within the scope of the indemnity provisions of the contract; otherwise there can be no recovery therefor by the indemnitee from the indemnitor. The contract does not expressly provide, nor do we believe it broad enough, to be fairly and reasonably susceptible to a construction which would impose an obligation upon the contractor to indemnify Ohio against its own negligence. It follows, in such case, that the indemnitor cannot be held liable to indemnify for any personal injuries resulting from the indemnitee's negligence or the negligence of its employees.

We have pointed out that the particular instrumentality (the test tank) which al-legedly caused the injuries resulting in the damages complained of, was not one of the specified items required to be furnished by either party to this contract, nor is it shown that the Contractor requested Ohio to furnish such tank after the work commenced. However, by reason of its dangerous and defective condition, it unquestionably increased the hazard surrounding the work. It has been held that where the hazard is increased in an unexpected manner by some act or negligence of the indemnitee, indemnitor will not be liable to indemnitee for loss or damage resulting therefrom. 42 C.J.S. Indemnity § 12d, p. 582; Pennsylvania R. Co. v. Roydhouse, 267 Pa. 368, 110 A. 277.

Appellant's first three points are sustained, and all other points raised by appellant are overruled. Our holdings discussed above require that the judgment of the trial court be reversed, and that judgment be here rendered for appellant, and it is so ordered.

CLAYTON, Justice (concurring).

I agree with the conclusion reached in this case. To have made any other disposition of the matter would have been to impose upon appellant the broad and strict responsibilities of an insurer of appellee against liability for injuries which might arise under *any* circumstances, whether those circumstances were in any degree under the control of appellant or not. On the contrary, appellant was bound only by a contract of indemnity, insofar as this case is concerned, "for injury to * * * any person * * * arising out of or attributed, directly or indirectly to the operations of Contractor hereunder."

In Quinones v. Township of Upper Moreland, et al., 187 F.Supp. 260 (160) at page 266, the United States District Court for the Eastern District of Pennsylvania presents a review of the so-called "express negligence" rule. The court states:

"In Pennsylvania the general rule is that a contract of indemnity will

**450**

not be held to protect the indemnitee against the consequences of his own negligence unless such intent is clearly shown in the contract. The reasoning most frequently offered to support this rule is that to hold otherwise would be to put the indemnitor at the mercy of the indemnitee's negligent conduct, a result which the court would not permit absent a clear showing that the parties so intended."

citing, among many other cases, Perry v. Payne, 217 Pa. 252, 66 A. 553, 11 L.R.A., N.S., 1173, referred to in the opinion in the instant case.

Similar language is not unknown to Texas courts. In the case of San Antonio & A. P. Ry. Co. et al. v. Adams, 6 Tex. Civ.App. 102, 24 S.W. 839, plaintiff was an express messenger in the employ of the Pacific Express Company. By contract between the express company and the defendant railroad company, the latter was bound to carry the plaintiff and goods in his charge in the baggage car of its passenger train, which was exclusively under the control of the defendant. Through the latter's negligence, the car in which the plaintiff was riding fell through a bridge, injuring plaintiff. A clause in the contract between the two companies read as follows:

"B. Said express company assumes all risk of loss or damage arising out of, or resulting from, its operations under this agreement, and shall hold harmless the said railway company against the same."

The court held:

"The express company assumed risks 'arising from its operations' under the agreement,—that is, as we construe it, its own losses, and losses for which it would be responsible. It was not liable, in any sense, to plaintiff for his injuries caused by the negligence of the railway company in failing to keep its bridges and roadbed in repair, and

his injuries could not be a loss to the express company. * * * The railway company could not contract to make a third party responsible to its employes, or to passengers, for its negligence and wrong, so as to bind the latter, even with their consent, nor will we be understood as holding that such a contract would be binding upon such third party; but we rest our opinion upon the contract itself, as not intended to create such a liability."

It occurs to this writer that in a case such as the instant case, which involves the interpretation of an owner-contractor agreement including indemnity provisions, the application of the "express negligence" rule leads to a greater degree of fairness as well as to more uniformity of decisions, and will, in all likelihood, reduce the volume of litigation.