**Earl L. (Hank) MITTERLEHNER, d/b/a S & M Distributing Co., Appellant,**

**v.**

**MERCANTILE NATIONAL BANK AT DALLAS, Trustee, Appellee.**

**No. 16319.**

Court of Civil Appeals of Texas.

Dallas.

March 13, 1964.

Rehearing Denied April 10, 1964.

Harold B. Berman, Dallas, for appellant.

Brundidge, Fountain, Elliott & Churchill, L. E. Elliott, Dallas, for appellee.

DIXON, Chief Justice.

Earl L. Mitterlehner, appellant, doing business as S & M Distributing Company, brought this suit against his landlord, Mercantile National Bank at Dallas, Trustee, for damages to merchandise stored in a leased building which damages are alleged to have been caused by water leaking from water pipes in the building.

Appellant is in the bonded warehouse business. The merchandise alleged to have been damaged belonged to one of his customers. The Bank is trustee for the Estate

of Carl Wallace and Wanda Mae Wallace, owner of the building.

The appeal is from a summary judgment entered in favor of the Bank. The record before us consists of the pleadings of the parties, answers of appellant in response to written interrogatories propounded by appellee, and the deposition of J. L. Willess, a trust officer of the Bank. Several exhibits are attached to the depositions.

## PLEADINGS

In his original petition appellant alleges that in a written lease agreement landlord, Bank, Trustee, obligated itself to place in good condition and repair the plumbing in the building but that it failed to do so with the result that water damage occurred in the amount of $3,603.89. In the alternative appellant alleges that the Bank was negligent in that the Bank failed (1) to place the plumbing in good condition, (2) and (3) to cap or cap properly a water pipe, and further, the Bank (4) turned the water on without inspecting all outlets, (5) left the water on after using same, and (6) failed to advise appellant that it had turned the water on.

Appellee, the Bank, in addition to a general denial, pled three provisions of the contract as defenses to appellant's action, which three provisions will be copied in full later in this opinion.

In its unsworn motion for summary judgment the Bank alleges that there is no liability on the Bank for the water damage for the reason that "no demand was made on the defendant to repair any plumbing prior to the time the damage is claimed to have been sustained."

In his unsworn reply appellant contends that the lease itself contained notice to appellee to repair the plumbing. He also reiterates his allegations of negligence.

## FACTS

On January 18, 1962 the parties entered into a written lease agreement made out on a printed form styled "DALLAS REAL ESTATE BOARD OFFICIAL FORM—EXISTING BUILDING".

Our decision in this case depends mainly on the interpretations we give to three paragraphs of the lease and the relationship of these paragraphs to each other. Therefore we deem it well to copy these paragraphs in full:

"2. Tenant acknowledges that it has fully inspected the demised premises, and on the basis of such inspection, Tenant hereby accepts the demised premises, and the buildings and improvements situated thereon, as suitable for the purposes for which the same are leased, in their present condition, with such changes therein as may be caused by reasonable deterioration between the date hereof and the commencement date of this Lease; provided that in the event any presently installed plumbing, plumbing fixtures, electrical wiring, lighting fixtures, or air conditioning and heating equipment are not in good working condition on the commencement date of this lease, Landlord agrees to repair promptly any such defects of which Tenant delivers written notice to Landlord within thirty days after the commencement date of this lease."

"15. Landlord shall not be liable to Tenant or Tenant's employees, agents, or visitors, or to any other person whomsoever, for any injury to person or damage to property on or about the demised premises, caused by the negligence or misconduct of Tenant, its agents, servants, employees, or invitees, or caused by the building and improvements located on the premises becoming out of repair, or caused by leakage of gas, oil, water or steam or by electricity emanating from the premises, or due to any other cause whatsoever, and Tenant agrees to indemnify Landlord and hold it harmless from

any loss, expense, or claims arising out of any such damage or injury."

"27. Special provisions: Lessor will at his expense place in good mechanical condition the following items:

"1. Air Conditioning Equipment

"2. Electrical Wiring and Outlets

"3. Adjust Doors

"4. Plumbing."

Paragraphs Nos. 2 and 15 are printed, as are most other paragraphs in the contract, but Paragraph No. 27 is typewritten in a blank space following the printed caption "Special provisions".

The lease is for a term of five years commencing February 1, 1962. It provides for rental of $250.00 per month for the first four months and $468.75 per month thereafter. For the first four months the premises were to be used only for warehouse purposes, but in June 1962 appellant expected to and did move his office and office staff into the building.

There is evidence that on January 23, 1962 the Bank employed a maintenance company to clean the building, which had been vacant for some time prior to the time appellant leased it. Nothing further was done to the building by the Bank until June 5, 1962 and June 7, 1962 when a plumbing company employed by the Bank repaired leaks and repaired a commode. This was after the alleged water damage had occurred.

Exhibits attached to the deposition of Willess indicate that the Bank paid a final water bill on January 24, 1962 representing service rendered to January 15, 1962. On January 24, 1962 the Bank returned to the Dallas City Water Works an unexecuted contract form for water service to the building, which contract form the Bank declined to execute "due to our leasing the building and service being discontinued in our name." There is no evidence as to whether the water supply was disconnected at that time.

The alleged water damage occurred on or about April 5, 1962 when two of appellant's employees saw water flowing into the premises from leaking water pipes. Appellant testified that he did not enter into a contract with the City to furnish water for the premises until June 15, 1962, and that he did not connect it until that date. He further testified that he did not use water on the premises in February, March, April or May 1962, but that the Bank turned the water on prior to the time of the flooding of the building which caused the damage.

OPINION

In two points on appeal appellant contends that the trial court erred in sustaining appellee's motion for summary judgment on the grounds that (1) appellee had no liability for water damage because no demand was made by appellant on appellee to repair any plumbing prior to the time the damage is alleged to have been sustained; and (2) the lease agreement contained an exculpatory clause, Paragraph No. 15, which excused appellee from its own affirmative negligence in undertaking to perform its covenants as provided in said agreement.

█ It is our opinion that Paragraph No. 27 placed an obligation on appellee to put the plumbing "in good mechanical condition" and that the provision itself constitutes notice to appellee to perform its obligation. We do not believe that Paragraphs Nos. 2 and 27 are in conflict, but if they are Paragraph No. 27 must control for it is a special typewritten part of the contract while Paragraph No. 2 is part of the printed form. McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341; 13 Tex.Jur. 2d 325.

█ Appellant concedes that exculpatory provisions such as Paragraph No. 15 of the written lease are not contrary to public

policy and are valid and enforceable in this state. Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775; Smith v. Ohio Oil Co., Tex.Civ.App., 356 S.W.2d 443. In the Mitchell's, Inc., case above cited our Supreme Court said:

"It is not necessary, therefore, for the parties to say in so many words that they intend to protect the indemnitee against liability for negligence. An obligation to hold harmless from claims, liability or damage resulting from a specified operation or instrumentality will be enforced in accordance with its terms even though the indemnitee may thereby be relieved of the consequences of his own negligence. See also Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204, Id., 111 Tex. 18, 226 S. W. 140."

We believe that Paragraph No. 15 in the contract under consideration here protects appellee from its own negligence.

Appellant says that exculpatory provisions are applicable to protect an indemnitee only from its own passive negligence and that it will not serve to protect him from his own active negligence in performing a covenant to repair. 175 A.L.R. 89; 84 A.L.R. 654. We need not pass on the question here, for the record before us contains no evidence of active negligence on the part of appellee.

Appellee did employ a plumber to repair leaks, but this was in June 1962 after the damage occurred in April 1962. There is no evidence that the plumber was negligent in repairing the leaking pipe in June of 1962. In any event his negligence, if there was any, could not have been the cause of the damage in April of 1962.

The evidence is undisputed that some time in January 1962 appellee employed a maintenance company to clean the premises.

There is no evidence that the maintenance company undertook to repair any plumbing, or that it even turned on the water. The evidence is also undisputed that on January 24, 1962 appellee paid a final water bill as of January 15, 1962 and declined to enter into a new contract with the City Water Department, its reason being that the premises had been leased. So far as the record before us shows appellee did nothing between January 1962 and June of 1962 toward placing the plumbing "in good mechanical condition." If its failure to act is negligence, it is passive negligence, not active negligence; and under appellant's own theory appellee would not be liable for such negligence.

■ The nearest the evidence comes to showing any active negligence on the part of appellee is a statement by appellant in his answer to interrogatories. He said that appellee "turned the water on *prior to the time of the flooding of the building* which caused my damage." (Emphasis added.) The phrase "prior to the time of the flooding of the building" is too general and indefinite to have any probative value in fixing the time of the alleged turning on of the water by appellee. It could mean ten years prior to the time, or one year prior to the time, etc. It certainly is not evidence that appellee turned on the water on or about April 5, 1962, the time the water damage is alleged to have been sustained. This is especially true in the light of the undisputed evidence above referred to.

Under the circumstances of this particular case we believe the court properly rendered summary judgment for appellee. Both points on appeal are overruled.

The judgment of the trial court is affirmed.

Affirmed.

BATEMAN, J., not sitting.